## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## AUGUSTA DIVISION

| | | |
|---|---|---|
| JARVIS SIMS, | ) | |
| | ) | |
| PLAINTIFF, | ) | CIVIL ACTION |
| | ) | FILE No.: **CV122-099** |
| v. | ) | |
| | ) | |
| CITY OF AUGUSTA-RICHMOND | ) | |
| COUNTY, | ) | |
| | ) | |
| DEFENDANT. | ) | |

## **COMPLAINT FOR DAMAGES**

**COMES NOW,** Jarvis Sims, Plaintiff in the above-styled action, and submits

this Complaint for Damages against Defendant City of Augusta-Richmond County

(the "City") for violations of Title I of the Americans with Disabilities Act as

amended by the Americans with Disabilities Act Amendments Act of 2008, 42

U.S.C. § 12112 *et seq*. ("ADAAA"), the Age Discrimination in Employment Act of

1967, 29 U.S.C. § 621 *et seq.* ("ADEA"), and the Family and Medical Leave Act,

29 U.S.C. § 2601 *et seq.* ("FMLA") seeking back pay and lost economic benefits of

employment, liquidated damages, compensatory damages, and reasonable attorney's

fees and costs of litigation.

## Jurisdiction and Venue

1.

Mr. Sims's claims present federal questions over which this Court has jurisdiction pursuant to 28 U.S.C. § 1331, § 1343(a), and 42 U.S.C. § 2000e-5(f)(3).

2.

The violations of Mr. Sims's rights occurred in the Southern District of Georgia. The venue is proper under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391(b) and (c), as every act of which Mr. Sims complains occurred within the Southern District of Georgia and Defendant resides within the Southern District of Georgia.

## Parties

3.

Mr. Sims is a citizen of the State of Georgia, residing in Henry County, Georgia. At all times relevant hereto, Mr. Sims was employed by Defendant.

4.

Defendant as a political subdivision of the State of Georgia and is subject to the jurisdiction of this Court. It may be served with process by service upon the City's Mayor, Hardie Davis, Jr., or upon any other agent authorized to receive service of process, at 535 Telfair Street, Suite 200, Augusta, Georgia 30901.

5.

Defendant is an employer within the meaning of the ADAAA, 42 U.S.C. § 12111(5).

6.

Mr. Sims was a "qualified individual with a disability" as that term is used and defined by the ADAAA, 42 U.S.C. § 12102(1) and § 12111(8).

## Administrative Proceedings

7.

Mr. Sims timely filed a charge of discrimination against Defendant with the United States Equal Employment Opportunity Commission ("EEOC").

8.

Counsel for Mr. Sims received a Notice of Right to Sue from the EEOC on or about May 19, 2022 (within the last ninety (90) days) and Mr. Sims has otherwise complied with all other conditions precedent to the assertion of Mr. Sims's claims under the ADAAA.

## Statement of Facts

9.

Mr. Sims was hired as one of two Deputy Administrators with the City on or about August 13, 2018.

10.

Mr. Sims was promoted to Interim City Administrator for the City on or about April of 2019.

11.

Mr. Sims was diagnosed with chronic kidney disease in 1998 which substantially limits the major life activities of, among others, performing manual tasks, sleeping, concentrating, thinking, communicating, and eating.

12.

As a result, Mr. Sims is a qualified individual with a disability under the ADAA.

13.

The City was aware of this diagnosis and Mr. Sims' status as a disabled individual.

14.

On or about November 2020, Mr. Sims' doctor informed him that his disability had deteriorated to stage five, such that he needed to take medical leave to accommodate surgery for his disability and would need a transplant.

15.

Mr. Sims informed the City of this through Ms. Anita Rookard, Director of Human Resources for the City, and requested FMLA leave for the surgery and recovery.

16.

The FMLA request was granted through February 25, 2021.

17.

Ms. Rookard also advised Mr. Sims that, upon the expiration of his FMLA entitlement, he could participate in the employee "sick pool" for additional time off as needed.

18.

Ms. Rookard, upon being informed of Mr. Sims' disability and medical diagnosis, stated that she would advise the then-City Administrator, Mr. Odie Donald, about Mr. Sims' medical condition and need for leave.

19.

Mr. Sims returned to work on February 25, 2021.

20.

When Mr. Sims returned to work, he was in communication with Ms. Rookard about the status of his disability and that he was close to having a transplant scheduled.

21.

Mr. Sims was told that his FMLA was exhausted until November of 2021.

22.

As a result, Mr. Sims requested accommodations for additional temporary leave for the transplant that would likely occur prior to November of 2021.

23.

Ms. Rookard again advised him on the availability of the employee "sick pool" in the event of a transplant, but this time indicated that entitlement to use that leave had to be approved by the City Administrator, Mr. Donald.

24.

However, prior to his termination, no accommodation for additional leave, or approval for the use of the "sick pool" was given.

25.

Upon Mr. Sims' return to work, he was assigned to his former role as a Deputy Administrator.

26.

Mr. Sims was harassed and humiliated by his supervisor, Mr. Donald.

27.

Mr. Donald took steps to embarrass and chastise Mr. Sims in front of city staff.

28.

Mr. Donald excluded Mr. Sims from communications, meetings, and strategy operations of the City.

29.

In addition, Mr. Donald chaotically reassigned tasks to Mr. Sims in an apparent effort to compel Mr. Sims to quit.

30.

During this time, Mr. Sims experienced severe stress, anxiety, embarrassment, and humiliation due to the efforts by the City to force him out.

31.

A little over a month after Mr. Sims returned from leave, on April 1, 2021, the City terminated Mr. Sims without cause.

32.

Following this termination, Mr. Sims learned that both he (52) and the other Deputy Administrator, Mr. Tony McDonald (60+), had been terminated from their employment by Mr. Donald.

33.

Mr. Sims was a member of the protected group of persons between the ages of forty and seventy; he was subjected to adverse employment actions, and he was qualified to do the job for which he was terminated from.

34.

Mr. Sims would have been vested with the City in 2023.

## COUNT I: FAILURE TO ACCOMMODATE
## IN VIOLATION OF THE ADAAA

35.

At all relevant times, the City has been subject to the requirements of the ADAAA.

36.

At all times relevant, Mr. Sims was a qualified individual with a disability and was an employee of the City.

37.

Mr. Sims had a physical or mental impairment that substantially limited one or more life activities, including performing manual tasks, sleeping, concentrating, thinking, communicating, and eating.

38.

Mr. Sims had a record of a physical or mental impairment that substantially limited one or more life activities.

39.

The City regarded Mr. Sims as having a physical or mental impairment that substantially limited one or more life activities.

40.

However, Mr. Sims could perform the essential functions of his job with the City with or without reasonable accommodation.

41.

Mr. Sims made reasonable requests for accommodation by requesting that he be accommodated with FMLA leave for surgery and recovery.

42.

While the City did provide certain accommodations for FMLA when Mr. Sims' when FLMA was granted through February 25, 2021, it failed to provide reasonable accommodation when Mr. Sims was actually performing his job for the City.

43.

The City had available to it a "sick pool" that could have assisted Mr. Sims, yet refused to provide the same to Mr. Sims.

44.

This accommodation would not have been an undue burden to the City.

45.

The City intentionally discriminated against Mr. Sims by, among other things, failing and refusing to engage in the interactive process and not accommodating his

request for accommodations, including but not limited to allowing additional time off for his surgery.

46.

By denying Mr. Sims reasonable accommodations, City discriminated against him because of his disabilities and violated his rights under the ADAAA.

47.

As a direct and proximate result of the City's intentional discrimination and failure and refusal to accommodate Mr. Sims, he suffered out-of-pocket losses and was deprived of job-related economic benefits, including income in the form of wages and other job-related benefits, including social security and becoming vested with the City, all in an amount to be established at trial.

48.

City's actions caused Mr. Sims to suffer damages of embarrassment, emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

## **COUNT II: RETALIATION IN VIOLATION OF THE ADAAA**

49.

At all relevant times, the City has been subject to the requirements of the ADAAA.

50.

At all times relevant, Mr. Sims was a qualified individual with a disability and was an employee of the City.

51.

Mr. Sims had a physical or mental impairment that substantially limited one or more life activities, including performing manual tasks, sleeping, concentrating, thinking, communicating, and eating.

52.

Mr. Sims had a record of a physical or mental impairment that substantially limited one or more life activities.

53.

The City regarded Mr. Sims as having a physical or mental impairment that substantially limited one or more life activities.

54.

However, Mr. Sims could perform the essential functions of his job with the City with or without reasonable accommodation.

55.

Mr. Sims engaged in statutorily protected activity by, among other things, exercising or attempting to exercise or enjoy rights under the ADAAA, including but not limited to, requesting a reasonable accommodation for his disabilities.

56.

City Defendant subjected Mr. Sims to adverse employment actions including, but not limited to, denying his requests for reasonable accommodations and failing to investigate or remediate his claims of discrimination and retaliation, punishing him with points that he should not have been awarded, treating him more harshly than his non-disabled peers, and, ultimately, wrongfully terminating him.

57.

City's actions amount to violations of the ADAAA, which prohibits employers from discriminating against an individual because he has opposed any act or practice made unlawful under the ADAAA, 42 U.S.C. § 12203(a), and also prohibits employers from interfering with any individual in the exercise or enjoyment of rights under the ADAAA on account of him having exercised or enjoyed or attempted to exercise or enjoy such rights, 42 U.S.C. § 12203(b).

58.

As a direct and proximate result of the City's retaliation, he suffered out-of-pocket losses and was deprived of job-related economic benefits, including income in the form of wages and other job-related benefits, including social security, and pension, all in an amount to be established at trial.

59.

City's actions caused Mr. Sims to suffer damages of embarrassment, emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

## COUNT III: DISCRIMINATION IN VIOLATION OF THE ADAAA

60.

At all relevant times, City has been subject to the requirements of the ADAAA.

61.

At all times relevant, Mr. Sims was a qualified individual with a disability and was an employee of the City.

62.

Mr. Sims had a physical or mental impairment that substantially limited one or more life activities, including performing manual tasks, sleeping, concentrating, thinking, communicating, and eating.

63.

Mr. Sims had a record of a physical or mental impairment that substantially limited one or more life activities.

64.

The City regarded Mr. Sims as having a physical or mental impairment that substantially limited one or more life activities.

65.

However, Mr. Sims could perform the essential functions of his job with the City with or without reasonable accommodation.

66.

The City was aware of Mr. Sims's disabilities.

67.

The City subjected Mr. Sims to adverse employment actions including, but not limited to, denying his requests for reasonable accommodations and failing to investigate or remediate his claims of discrimination and retaliation, punishing him by chaotically reassigning tasks to him, treating him more harshly than his non-disabled peers, and, ultimately, wrongfully terminating him.

68.

The City's actions amount to a violation of Section 102 of the ADAAA, 42 U.S.C. § 12112, which prohibits discrimination on the basis of disability.

69.

As a direct and proximate result of City's intentional discrimination Mr. Sims, suffered out-of-pocket losses and was deprived of job-related economic benefits,

including income in the form of wages and other job-related benefits, including social security and pension, all in an amount to be established at trial.

70.

City's actions caused Mr. Sims to suffer damages of embarrassment, emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

## COUNT IV: DISCRIMINATION IN VIOLATION OF THE ADEA

71.

The City is subject to the Age Discrimination in Employment Act, 29 U.S.C. § 621. et seq. (the "ADEA").

72.

At all relevant times, the City was an "employer" under the ADEA and Plaintiff was an "employee" entitled to protections under the ADEA.

73.

At all relevant times, Plaintiff was at least 40 years of age.

74.

Plaintiff was qualified for his position at the time of his termination as he had previously been promoted to Interim City Director.

75.

The City intended to discriminate against the Plaintiff due to his age and Plaintiff's age was the but-for cause of his termination; specifically, the City fired Plaintiff because he was too old and too disabled to continue to employ.

76.

The City refused to consider retraining or relocating the Plaintiff to another position.

77.

The City did not articulate any legitimate, non-discriminatory reason for Plaintiff's termination.

78.

In terminating Plaintiff because of his age, the City committed a willful violation of the ADEA.

79.

As a direct and proximate result of City's intentional discrimination, suffered out-of-pocket losses and was deprived of job-related economic benefits, including income in the form of wages and other job-related benefits, including social security and pension, all in an amount to be established at trial.

80.

City's actions caused Plaintiff to suffer embarrassment, emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

81.

Plaintiff is also entitled to recover back pay, front pay, liquidated damages, punitive damages, prejudgment interest, and attorney's fees for the City's discrimination.

## COUNT V: RETALIATION IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT

82.

The City is subject to the Family and Medical Leave Act, 29 U.S.C. § 2601, et seq. ("FMLA").

83.

At all relevant times, the City was an employer under the FMLA and Plaintiff was an employee entitled to protections under the FMLA.

84.

At all relevant times, Plaintiff had worked at least 12 months for the City and for at least 1,250 hours during the 12-month period before he took FMLA leave.

85.

Plaintiff engaged in protected activity by requesting and taking FMLA leave.

86.

The City retaliated against the Plaintiff for taking FMLA leave by engaging in a pattern of harassment and terminating him less than two months after his return from FMLA leave.

87.

The City's decision to harass and terminate the Plaintiff was because of him engaging in protected activity in taking FMLA leave.

88.

As a direct and proximate result of City's intentional discrimination, suffered out-of-pocket losses and was deprived of job-related economic benefits, including income in the form of wages and other job-related benefits, including social security and pension, all in an amount to be established at trial.

89.

City's actions caused Plaintiff to suffer embarrassment, emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

90.

Plaintiff is also entitled to recover back pay, front pay, liquidated damages, punitive damages, prejudgment interest, and attorney's fees for the City's discrimination.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff prays:

(a)     That he have a trial by jury;

(b)     That he be granted Judgment in his favor and against City on all Counts of this Complaint;

(c)     That the City be Ordered to make the Plaintiff whole by providing for his out-of-pocket losses as well as back pay in an amount equal to the sum of any wages, salary, employment benefits, pension or other compensation denied or lost as a result of City unlawful and discriminatory acts, together with interest thereon, all in an amount to be proved at trial;

(d)     That the City be Ordered to pay statutory penalties and damages;

(e)     That the City be Ordered to pay front pay to Plaintiff;

(f)     That the Defendant be Ordered to compensate Plaintiff for mental and emotional damages suffered as a result of City's unlawful and discriminatory acts;

(g)     That he be granted punitive damages for City's willful and intentional violations of the ADAAA as provided by 42 U.S.C. §§ 1981a and 12117(a);

(h)     That he be granted his reasonable attorney's fees and expert witness fees together with any and all other costs associated with this action as provided by 42 U.S.C. §§ 12205 and 12117(a);

(i)     That he be awarded all damages available under 29 U.S.C.A. § 2617

and 29 U.S.C.A. § 626; and

(i)     That he be granted such other and further additional relief as this Court

deems equitable and just.

Respectfully submitted, this 29 day of July, 2022.

                                        */s/ Grant E. McBride*
                                        Grant E. McBride
                                        Georgia Bar No. 109812
                                        gmcbride@smithwelchlaw.com
                                        Megan Murren Rittle
                                        Georgia Bar No. 384595
                                        mmrittle@smithwelchlaw.com
                                        Attorneys for Plaintiff

**SMITH WELCH WEBB & WHITE, LLC**
Post Office Box 10
2200 Keys Ferry Court
McDonough, GA  30253
(770) 957-3937 phone
(770) 957-9165 facsimile
gmcbride@smithwelchlaw.com

## **CERTIFICATION**

The undersigned certifies that this notice has been prepared with one of the font and point selections approved by the Court in LR 5.1(B).

This 29 day of July, 2022.

*/s/ Grant E. McBride*
Grant E. McBride
Georgia Bar No. 109812
gmcbride@smithwelchlaw.com
Megan Murren Rittle
Georgia Bar No. 384595
mmrittle@smithwelchlaw.com
Attorneys for Plaintiff

SMITH, WELCH, WEBB & WHITE, LLC
2200 Keys Ferry Court
P.O. Box 10
McDonough, GA 30253
Telephone: (770) 957-3937
Facsimile (678) 583-4888
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2022, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

/s/ Grant E. McBride
Grant E. McBride
Georgia Bar No. 109812
gmcbride@smithwelchlaw.com
Megan Murren Rittle
Georgia Bar No. 384595
mmrittle@smithwelchlaw.com
Attorneys for Plaintiff

SMITH, WELCH, WEBB & WHITE, LLC
2200 Keys Ferry Court
P.O. Box 10
McDonough, GA 30253
Telephone: (770) 957-3937
Facsimile (678) 583-4888
Attorney for Plaintiff