EXHIBIT 5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | |
|---|---|
| JARVIS SIMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO.: |
| ) | 1:22-cv-00099-JRH-BKE |
| CITY OF AUGUSTA-RICHMOND ) | |
| COUNTY ) | |
| ) | |
| Defendant. ) | |

## DECLARATION OF ANITA ROOKARD

1.

My name is Anita Rookard. I have personal knowledge of the facts set forth in this Declaration and know them to be true and correct. I am over the age of eighteen years old, am suffering from no known disabilities, and am competent to execute this Declaration.

2.

My individual deposition was taken in this case on April 19, 2023. I also served as the corporate representative for the City of Augusta-Richmond County during a deposition that occurred on August 11, 2023. This Declaration is intended to supplement and not to substitute my prior deposition testimony.

3.

I am the current Human Resources Director for the City of Augusta-Richmond County.

4.

In my role as Human Resources Director, I am the custodian of record for past and present employees' personnel files.

5.

Within an employee's personnel file, there is a Human Resources New Hire Questionnaire Form, which includes information such as the employee's name, social security number, address, date of birth, sex, marital status, and race.

6.

Based on my review of the personnel files in my custody, possession, and control, the following individuals were born in the following years:

i. City Administrator Odie Donald was born in 1978.

ii. Deputy Administrator Jarvis Sims was born in 1969.

iii. Deputy Administrator Tony McDonald was born in 1960.

iv. Deputy Administrator Tanikia Jackson was in 1974.

v. Deputy Administrator Charles Jackson was born in 1973.

7.

The personnel files also include information relating to employees' hire dates.

8.

Based on my review of the personnel files in my custody, possession, and control, the City hired Charles Jackson on May 15, 2021 and Tanikia Jackson on August 7, 2021 to serve as Deputy Administrators. Charles Jackson and Tanikia Jackson took over the roles previously held by Jarvis Sims and Tony McDonald, both of whom were terminated on April 1, 2021.

9.

I never spoke with Odie Donald about the nature of Jarvis Sims' medical condition, nor did I ever inform Mr. Donald that Mr. Sims might potentially need leave in the future in order to

undergo a kidney transplant procedure. In addition, at no point during his employment did Odie Donald ever access or request to have access to Mr. Sims' personnel or medical files.

10.

I was born in 1967, and am approximately one year older than Mr. Sims.

11.

After Mr. Sims filed a Charge of Discrimination against the City with the United States Equal Employment Opportunity Commission ("EEOC"), the City retained counsel who submitted a position statement on behalf of the City. A true and correct copy of the City's position statement to the EEOC is attached hereto as Exhibit A.

12.

By my signature below, I declare under penalty of perjury that the foregoing is true and correct to the best of my personal knowledge, information, and belief pursuant to 28 U.S.C. § 1746.

Executed on September __14__, 2023.

Signature: *Anita Rookard*
Anita Rookard, HR Director

# Exhibit A

# The City's Position Statement Submitted to the EEOC



*McFadden Davis, LLC*

**JAMALA S. McFADDEN**
Direct: 678-424-1381
Facsimile: 404-891-6840
Email: jmcfadden@theemploymentlawsolution.com

March 25, 2022

**Charging Party: Jarvis Sims**
**Respondent: Augusta, Georgia**
**Charge No.: 410-2021-05956**

Matthieu Linen
Federal Investigator
U.S. Equal Employment Opportunity
Commission Atlanta District Office
100 Alabama Street S.W., Suite 4R30
Atlanta, GA 30303
(*Matthieu.Linen@EEOC.gov*)

Dear Mr. Linen:

     As you are aware, The Employment Law Solution: McFadden Davis, LLC represents the Consolidated Government of Augusta, Georgia ("Augusta, Georgia"), with respect to the above-referenced Charge of Discrimination alleging discrimination and retaliation under the Americans with Disabilities Act (the "ADA") and the Age Discrimination in Employment Act ("ADEA") by Jarvis Sims ("Charging Party").  This letter is being submitted as the position statement in response to this Charge.[1]

---

[1] This position statement is submitted solely to aid the Equal Employment Opportunity Commission's investigation of the Charge.  Augusta, Georgia does not authorize the release of this position statement or any documents submitted with this position statement.  Augusta, Georgia also reserves the right to submit additional information at any time that may add to or modify this position statement.  In addition, by submission of this position statement, Augusta, Georgia does not waive any legal defense or theory in opposition to any allegations in the Charge or subsequent Charges and specifically reserves its right to assert any applicable legal defenses.

## PRELIMINARY STATEMENT

Charging Party claims that Augusta, Georgia discriminated and retaliated against him based on his age and disability when he was terminated from his position as a Deputy Administrator. Augusta, Georgia denies that Charging Party has been subject to any unlawful discrimination. Contrary to his assertions, Charging Party's employment ended, along with that of a second Deputy Administrator, after Augusta, Georgia hired a new Administrator who wanted to bring on two new Deputy Administrators to serve with him, just as the Administrator before him had done.

## FACTUAL BACKGROUND

### A.   The Consolidated Government of Augusta, Georgia

The consolidated government of Augusta, Georgia is a political subdivision of the State of Georgia, which employs more than 2,500 individuals. The governing authority of Augusta, Georgia is the Commission which consists of ten (10) commissioners and one (1) mayor.

Augusta, Georgia's Personnel Policy and Procedures Manual ("PPPM") was passed by the Commission, is published on its website, and is available to all employees at any time.[2] (A copy of the PPPM is attached hereto as Exhibit A for ease of reference). The entire second chapter of the PPPM is dedicated to equal employment opportunities and includes strict policies on equal employment including zero tolerance for discrimination based upon an individual's sex, race, religion, national origin, age, disability, or other legally protected classification. The Augusta, Georgia PPPM provides, in pertinent part, as follows:

> We provide equal employment opportunities regardless of race, color, religion, nation origin, sex, age, disability, military service or status, veteran status, citizenship status, or any other characteristic protected by federal, state, or local law.

(§200.001, p.38). It further provides:

> If you feel you are a victim of any form of discrimination, you have the right to voice your concerns. You can tell your immediate leader, any member of management or the Equal Employment Opportunity office at 706-826-4789. Retaliation against anyone who lodges a complaint in good faith is

---

[2] The PPPM is available online at http://appweb2.augustaga.gov/Human_Resources/

>   strictly prohibited and will be subject to discipline up to and
>   including termination.

(Id.).

### B.      Charging Party's Employment

On August 13, 2018, Augusta, Georgia hired Charing Party (52 years old) as one of two Deputy Administrators. The second Deputy Administrator, Tony McDonald, was hired on the same day as Charging Party. Both Charging Party and Mr. McDonald began their employment with Augusta, Georgia under former Administrator Janice Allen Jackson. Charging Party served as Deputy Administrator for operations, infrastructure and development. Mr. McDonald served as Deputy Administrator for finance, administration, and organizational effectiveness.

Charging Party served in the Deputy Administrator role from August 2018 until Administrator Janice Allen Jackson resigned in April 2019. He then served as Interim Administrator from April 2019 through November 2020. In October 2020, the Augusta Commission selected Odie Donald II for the Administrator role and he began work on November 16, 2020.[3] Charging Party then returned to his Deputy Administrator position and began reporting to Administrator Donald.

On November 20, 2020, Charging Party began an approved FMLA leave in connection with receiving treatment for chronic kidney disease. His FMLA leave ended on February 3, 2021.[4] From February 4, 2021, through February 25, 2021, Charging Party continued medical leave using Augusta, Georgia's sick pool, which provides up to 12 additional weeks of paid leave to participating employees. When Charging Party returned from medical leave, he returned to his Deputy Administrator position, reporting to Administrator Donald.

After Charging Party returned from leave, he informed Augusta, Georgia's HR Director, Anita Rookard, that he needed a day off for a doctor's appointment. The HR Director told Charging Party that sick pool leave is not available for doctor's appointments and that if he intended to be out of work intermittently for doctor's appointments and otherwise, he needed to let his manager, Administrator Donald, know.

---

[3] Administrator McDonald announced his resignation in February 2022. Takiyah Douse currently serves as Interim Administrator.

[4] While Charging Party was on FMLA leave in connection with his medical condition, he was actively searching and interviewing for other employment. *See, e.g.*, Susan McCord, *Deputy Augusta Administrator a Finalist for Metro City Manager Job*, The Augusta Chronicle, Feb. 10, 2021 (available at https://www.augustachronicle.com/story/news/local/2021/02/10/deputy-augusta-administrator-jarvis-sims-finalist-forest-park-city-administrator-job/4447405001/.

3

Charging Party told the HR Director that he did not want to talk with his manager about needing time off for medical appointments or leave. The HR Director informed Charging Party that HR is not involved in time-off requests for doctor's appointments and is only involved when an employee needs to take a medical leave. The HR Director also informed Charging Party that manager approval is not required for FMLA or leave utilizing the sick pool, which are both coordinated through HR.

Charging Party was never denied any leave he requested during his employment, including FMLA and sick pool leave. He was never denied any requested accommodation. Although Charging Party told HR at the end of February/early March that he may need additional leave in May 2021 for a kidney transplant, he never formally requested such leave and such leave was never denied. Indeed, HR had no knowledge of the duration of the potential leave, how the leave would be classified or any other specific information to properly consider an official leave request.

Augusta, Georgia terminated both Charging Party and his counterpart, Mr. McDonald, on April 1, 2021. Augusta later appointed two new Deputy Administrators: Charles Jackson (age 47) and Tanikia Jackson (age 47). Mr. Jackson began his employment with Augusta in May 2021 and handles the work assignments that Charging Party handled during his employment with Augusta, Georgia; and Ms. Jackson began her employment in August 2021.

The Administrator was never made aware of Charging Party's medical condition. Charging Party did not inform the Administrator about the nature of his illness. The HR Director did not inform the Administrator about Charging Party's illness. Indeed, Charging Party specifically told the HR Director that he did not want anyone to know about it. The HR Director only told the Administrator that Charging Party would be on leave.

Charging Party filed the Charge of Discrimination on July 14, 2021, alleging discrimination and retaliation based on age (52 years old) and disability. He also noted an FMLA claim in the Charge.

## ANALYSIS

### A.   Charging Party Cannot Establish a Prima Facie Case of Disability Discrimination.

To establish a prima facie employment-discrimination case under the ADA, the employee must show that, at the time of the adverse employment action, (1) he was regarded as having a disability; (2) he was a qualified individual for the position in question; and (3) the employer discriminated against him because of his disability. *See EEOC v. St. Joseph's Hosp., Inc.*, 842 F.3d 1333, 1343 (11th Cir. 2016). The third prong,

4

addressing causation, requires the plaintiff to show that the discriminatory motivation was the but-for cause of the adverse employment action. *Holly v. Clairson Indus.*, 492 F.3d 1247, 1263 n.17 (11th Cir. 2007).

For the purposes of this response, Augusta, GA does not dispute the first and second elements of Charging Party's disability claim. Rather, concerning the third causation prong, Charging Party cannot show that his disability was the but-for cause of his termination. Charging Party does not even attempt to allege that he was treated different than any other employee without a disability. The second Deputy Administrator, Mr. McDonald, who had no known or perceived disability, was terminated along with Charging Party.

Moreover, Charging Party never requested an accommodation for his disability during his employment. Although Charging Party now suggests that Augusta failed to allow him additional time off for a kidney transplant that may have occurred later in the year, Charging Party never made a specific request for future leave of any particular duration as an accommodation, and he does not allege otherwise in his Charge. An employer's "duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made." *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999).

Charging Party and Mr. McDonald were both terminated after Augusta, Georgia's new Administrator was hired and had the opportunity to select new deputies to serve with him, just as his predecessor had done. Both Charging Party and Mr. McDonald were hired and fired on the same days. Charging Party's disability was not the but-for cause of Augusta, Georgia's termination decision.

**B.     Charging Party Cannot Establish a Prima Facie Case of Age Discrimination.**

The ADEA makes it unlawful for an employer to discharge an employee because of his age. 29 U.S.C. § 623(a)(1). In an ADEA case involving discharge, a plaintiff may establish a prima facie case by showing: (1) that he was a member of the protected group of persons between the ages of forty and seventy; (2) that he was subject to an adverse employment action; (3) that a substantially younger person filled the position that he sought or from which he was discharged; and (4) that he was qualified to do the job for which he was rejected. *See O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 116 S.Ct. 1307, 1310 (1996) (stating that an ADEA plaintiff must show that he was replaced by someone "substantially younger," not necessarily by someone under age 40); *Jameson v. Arrow Co.*, 75 F.3d 1528, 1531 (11th Cir. 1996) (listing elements of prima facie case). Ultimately, an employee who brings an ADEA action "must establish that his age was the 'but-for' cause of the adverse employment action." *Liebman v. Metro. Life Ins. Co.*, 808 F.3d 1294, 1298 (11th Cir. 2015).

The facts here demonstrate that Augusta, GA did not replace Charging Party with someone substantially younger than Charging Party. Charging Party is 52 years old. The first new Deputy Administrator, Charles Jackson, was hired in May 2021, a month after Charging Party's termination, and was assigned his job duties. Mr. Jackson was 47 years old at the time he was hired and therefore not "substantially younger" than Charging Party.[5]

**C. Charging Party Cannot Overcome Augusta, GA's Legitimate, Non-Discriminatory and Non-Retaliatory Reasons for Terminating His Employment.**

Under both the ADA and ADEA, if the plaintiff establishes a prima facie case of discriminatory discharge, and the employer proffers a legitimate, nondiscriminatory reason for its decision, then the plaintiff must show that the reason was a pretext for discrimination. *See Liebman*, 808 F.3d at 1298; *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1359–61 (11th Cir. 1999). To establish pretext, the employee must produce evidence sufficient to permit a reasonable factfinder to conclude that the employer's reasons were not the real reasons for the adverse employment action. *See, e.g., Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1313 (11th Cir. 2016). A plaintiff cannot show pretext by recasting "an employer's proffered nondiscriminatory reasons" or substituting "his business judgment" for that of the employer's. *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc).

Even if we assume that Charging Party made out a prima facie case under the ADA and ADEA, he cannot show that Augusta, Georgia's proffered legitimate, nondiscriminatory reason for terminating him was pretext for discrimination. He offered noting in his Charge to show that Augusta, Georgia's stated reasons for terminating his employment were not the real reasons for the decision. There is nothing to suggest that Charging Party's age, disability or retaliation were factors in the decision to replace *both* then-current Deputy Administrators and allow the new Administrator to be involved in choosing two new Deputy Administrators. Charging Party began his employment with Augusta, Georgia under Administrator Ms. Jackson. And just like Ms. Jackson, when Mr. Donald was appointed Administrator, he wanted to bring in his own Deputy Administrators to support him in leadership. Both Charging Party and Mr. McDonald were terminated together, just as they were hired together.

While Charging Party may not agree with a new Administrator's decision to choose his/her own Deputy Administrators (even though those are the same circumstances under which Charging Party was hired), neither the EEOC nor the courts

---

[5] The second Deputy Administrator, Ms. Jackson (also 47), was hired in August 2021 – well after Charging Party filed the instant Charge asserting that Augusta replaced him with a younger person. Accordingly, Ms. Jackson cannot be the person he alleges replaced him.

are "in the business of adjudging whether employment decisions are prudent or fair." *Damon*, 196 F.3d at 1361. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1543 (11th Cir. 1997) (courts do not "second-guess the business judgment of employers."). Instead, "our inquiry is limited to whether the employer gave an honest explanation of its behavior." *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) (citation omitted).

The facts here make clear that age, disability and/or retaliation simply had nothing to do with the termination decision at issue here.

## CONCLUSION

As the above evidence clearly demonstrates, Charging Party's claims of discrimination and retaliation are wholly without merit. Augusta, Georgia denies Charging Party's claims that he was discriminated and retaliated against based on his age and disability. Instead, as shown above, Augusta, Georgia legitimately terminated Charging Party's employment. Based upon the foregoing discussion, Augusta, Georgia respectfully requests that the EEOC issue a "No Cause" determination and this Charge be dismissed in its entirety.

Sincerely,

*/s/ Jamala S. McFadden*
Jamala S. McFadden