**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**AUGUSTA DIVISION**

| | | |
|---|---|---|
| **JARVIS SIMS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.:** |
| | ) | **1:22-cv-00099-JRH-BKE** |
| **CITY OF AUGUSTA-RICHMOND** | ) | |
| **COUNTY** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S**
**STATEMENT OF ADDITIONAL FACTS**

1.      Jarvis Sims (hereinafter, "Mr. Sims") was the interim City Administrator when Mr. Odie Donald (hereinafter, "Mr. Donald") was hired as the full-time City Administrator. (Deposition of Odie Donald ("Donald Dep.") at p. 44, ln. 16-19).

**Response:**      The City concedes the Court may properly consider this fact.

2.      At this point, Mr. Sims returned to his position as Deputy City Administrator, where he remained until his termination. (Deposition of Jarvis Sims ("Sims Dep.") at p. 79, ln. 6-10) (Declaration of Jarvis Sims ("Sims Dec"), ¶ 3).

**Response:**      The City concedes the Court may properly consider this fact.

3.      The job duties of a Deputy City Administrator are to effectively provide "administrative support for Offices and the City and "manag[e] the work of department heads." (Donald Dep.   at p. 54, ln. 17-18; p. 54, ln. 20-22). More specifically, Mr. Sims oversaw eight departments, including housing, community development, parks and recreation, engineering, environmental services. (Sims Dep. at p. 126, ln. 2-5).

**Response:**      The City concedes the Court may properly consider this fact.

4.      An essential function of Mr. Sims' job was to attend meetings with all department heads and facilitate individual meetings with each department head to go over operational matters. (Sims Dep. at p. 127, ln. 19-23).

**Response:**      Defendant objects to Plaintiff's Statement of Additional Fact No. 4 on the grounds that it misstates the cited record evidence. Particularly, nowhere in Plaintiff's testimony or in his declaration does he testify that attendance at meetings with all department heads and facilitation of individual meetings with each department head were essential functions of the Deputy Administer position. The cited testimony deals with the question of what type of meetings the City would have, for which Plaintiff responded, "I'm trying to remember if it was weekly or biweekly, but we did meet with the department heads. And then we would meet individually with our department heads to go over matters, operational matters." (Pl. Dep. at 127:16-23.) Regardless, this evidence is completely immaterial, as Plaintiff did not respond to any arguments in the City's Brief in Support of its Motion for Summary Judgment contending that aside from Plaintiff's termination, he did not sustain any other adverse employment actions, meaning that Plaintiff abandoned any argument that his alleged exclusions from meetings and Mr. Donald's alleged demeaning comments about Plaintiff's work can form the basis for an actionable adverse employment action.[1]

5.      Mr. Sims has worked in local government for at least twenty years. (Sims Dep. at p. 41, ln 2-11).

**Response:**      The City objects on the grounds that this evidence is completely immaterial and irrelevant to issues set forth in the City's Motion for Summary Judgment.  Plaintiff was not

---

[1] "When a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned." Hudson v. Norfolk Southern Railroad Co., 209 F. Supp. 2d 1301, (N.D. Ga. 2001) (citing Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995)). See also Cellco Partnership v. City of Valdosta, 574 F.Supp.3d 1318, 1336 n. 10 (M.D. Ga. 2021) (same).

terminated because of any inexperience in local government.

6.     Throughout this time, Mr. Sims was grappling with chronic kidney disease, a medical condition in which the renal system deteriorates over time. (Sims Dep. at p. 43, ln. 15-17).

**Response:**     The City concedes the Court may properly consider this fact.

7.     When Mr. Donald assumed the role of City Administrator and Mr. Sims returned to the role of Deputy City Administrator in November of 2020, Mr. Sims' had entered chronic kidney disease stage 5. (Sims Dep. at p. 79, ln. 6-14; p. 80, ln. 24-25).

**Response:**     The City concedes the Court may properly consider this fact.

8.     As a result, Mr. Sims was experiencing several symptoms, such as fatigue, nausea, difficulty sleeping, lack of focus, and high blood pressure. (Sims Dep. at p. 79, ln. 17-22).

**Response:**     The City concedes the Court may properly consider this fact.

9.     Shortly after Mr. Donald assumed his position as City Administrator, he was notified via phone call that Mr. Sims would be taking FMLA and was provided with his FMLA paperwork. (Deposition of Anita Rookard ("Rookard Dep.") at p. 56, ln. 11-15; Donald Dep. at p. 52, ln. 20-25).

**Response:**     Defendant disputes Plaintiff's Additional Statement of Fact No. 9 on the grounds it makes assertions not supported by the record. Specifically, the record does not establish that Mr. Donald ever received Plaintiff's FMLA paperwork. The record only provides that Mr. Donald was notified that Plaintiff was taking FMLA leave. In the deposition testimony cited by Plaintiff, Mr. Donald testified that the City "told [him] that [Plaintiff] was taking some time off for FMLA," (Donald Dep. at 52:20-25), and Ms. Rookard testified that Mr. Donald "received a phone call that [Plaintiff] would be out for FMLA" and that he or his administrative assistant

"received the FMLA document stating [Plaintiff] would be out." (Rookard Dep. at 56:8-15.) Neither Mr. Donald nor Ms. Rookard testified that Mr. Donald received a copy of or was otherwise sent Plaintiff's FMLA paperwork.  As such, Plaintiff's alleged fact is not supported by the record and is objected to on this basis.

Further, as outlined in Defendant's Statement of Facts No. 16 and **already admitted** by Plaintiff in Plaintiff's Response to Defendant's Statement of Facts [Doc. 45, ¶ 16.]:

> Neither the Administrator nor Deputy Administrators are involved in the approval of FMLA or other leave of absence requests. (Rookard Dep. at 27:14-24; Donald Dep. 35:19-22, 36:2-17; Donald Decl. ¶ 6.) Once an individual is approved for FMLA leave, the Human Resources Department simply notifies the individual's department head or supervisor that he or she will be out on FMLA leave. (Rookard Dep. at 27:18-24; Donald Dep. 52:20-54:4.)

[Doc. 42-2, ¶ 16.][2]

10.     Before Mr. Sims went out on FMLA leave, he was open about the implications of his kidney failure, notifying Anita Rookard (hereinafter, "Ms. Rookard"), the Human Resources Director, that he was actively looking for a donor so he could undergo a kidney transplant. (Sims Dep. at p. 84, ln. 13-18). In fact, Mr. Sims was communicating with a friend who had agreed to donate his kidney and they were still working out scheduling. Id. (Sims Dec., ¶ 14)

**Response:**     The City concedes the Court may consider the fact that Plaintiff was actively looking for a donor and informed Anita Rookard of such, but objects to the Court's consideration of the assertion that Plaintiff's "friend [] had agreed to donate his kidney," which is plain hearsay and inadmissible on summary judgment.  See Fed. R. Evid. 802.  Plaintiff does not

---

[2] It is also undisputed that Plaintiff never had any discussions with Mr. Donald regarding the nature of his medical condition or the reasons for his leave of absence. (Pl. Dep. at 100:12-19; Donald Dep. at 110:19-111:1, 113:24-114:5; Donald Decl. ¶ 5.) Additionally, neither Ms. Rookard nor anyone else spoke to Mr. Donald about Plaintiff's medical condition, and in fact, Mr. Donald had no knowledge regarding Plaintiff's medical condition or the reasons behind his need for a leave of absence. (Donald Dep. at 52:20-54:4; Rookard Dep. at 55:24-56:20, 65:8-66:14; Pl. Dep. 101:5-102:20; Donald Decl. ¶ 5.; Rookard Decl. ¶ 9)

even identify who the purported friend is, nor has this friend provided a declaration or affidavit.

11.     Mr. Sims understood that, when a donor was confirmed, he would have to take additional time off to have a transplant and notified Ms. Rookard as much. (Sims Dep. at p. 84, ln. 13-15; p. 86, ln. 1-13).

**Response:**     The City objects on the grounds that this fact is immaterial because Plaintiff never ended up having the transplant at any point in 2021 or 2022 and never requested during his employment leave on a specific date associated with the hypothetical kidney transplant which never occurred.

12.     Mr. Sims even asked Ms. Rookard as to the process for taking additional time off, to which she replied that he "would be eligible for the sick leave pool" and could use it once the time came. (Sims Dep. at p. 84, ln. 15-18; p. 98, ln. 1-9) (Sims Dec., ¶13).

**Response:**     The City concedes the Court may properly consider this fact.

13.     However, Ms. Rookard advised Mr. Sims that it was Mr. Donald who would have to provide official approval that Mr. Sims was eligible for the sick leave pool. (Sims Dep. at p. 100, ln. 6-9). Mr. Donald was the sole authority who could approve Mr. Sims' sick leave pool request.

**Response:**     Defendant objects to Plaintiff's Statement of Additional Fact No. 13 on the grounds it makes assertions not supported by the record. Apart from Plaintiff's unsupported belief, there is no evidence in the record that provides Mr. Donald was involved in the approval process for participation in the sick leave pool participation. Notably, Plaintiff did not and cannot cite to anything in the record to support his assertion that "Mr. Donald was the sole authority who could approve [Plainitff's] sick leave pool request."

During Ms. Rookard's deposition, counsel for Plaintiff extensively questioned Ms.

Rookard about the sick leave pool. Nowhere in her testimony does she provide that Mr. Donald played any role in the decision-making process for sick leave pool participation. To the contrary, Ms. Rookard's testimony provided that Benefits Analyst Schevella Nicholes ultimately confirmed eligibility for participation in the sick leave pool. Specifically, Ms Rookard provided in pertinent part:

> Q:     [D]oes anybody review these requests for use for sick leave? I mean, does anybody get denied for the use of sick leave?
> A:     No. If you participate in the sick leave pool, then you can use it.
> …
> Q:     Who all is involved – like, let's say I'm an employee and I want to use the sick pool. Who do I talk to?
> A:     You would talk to – number one, you would talk to the person in payroll to make sure that you are a participant, or at that time it would have been Schevella Nicholes to make sure you were a participant in the program.
> Q:     Okay. So, basically, it's just reach out to Schevella, let her know you'd like to take it, and then it sounds like it's automatically approved?
> A:     Automatically reviewed.
> Q:     Okay. Who review its?
> A:     She does to make sure that you have it.
> Q:     Does that process ever get kicked up to you?
> A:     No.

(Rookard Dep. at 54:8-55:10.)

Counsel for Plaintiff also questioned Mr. Donald about his participation in the sick pool leave process. During his deposition, Mr. Donald was very clear that he was not involved in the sick pool leave process. Specifically, Mr. Donald testified in pertinent part:

> Q:     Do you have any involvement in [the sick pool] process?
> A:     Yeah, I think that would be done through HR or legal. It wouldn't come through my office, to my knowledge. I think, yeah, folks request, you know, time, you approve it and things of that nature. But the actual pool and who gets it and all of that stuff, yeah –
> Q:     Okay.
> A:     – I don't think that comes through the administrative office.

(Donald Dep. at 68:16-69:1.)

Furthermore, the City objects on the grounds that this fact is immaterial, because Plaintiff

never ended up having the transplant at any point in 2021 or 2022 and never requested during his employment leave on a specific date associated with the hypothetical kidney transplant which never occurred.  In turn, Plaintiff admitted that he received all of the sick leave he requested in connection with his prior leave of absence and was never denied the use of any sick pool pay for leave that he actually took. (Pl. Dep. at 96:6-97:9, 112:11-113:7, 109:18-110:22, 111:9-24; Pl. Dep. Ex's 21 and 22).

14.     Ms. Rookard assured Mr. Sims that she would discuss Mr. Sims' health condition with Mr. Donald for the purposes of notifying him that he would be applying to utilize the sick leave pool. (Sims Dec., ¶ 16).

**Response:**      The City objects to this alleged fact as immaterial.  Even if Ms. Rookard did make such a statement, such fact is immaterial as said discussion ultimately never occurred. Ms. Rookard never spoke to Mr. Donald about Plaintiff's medical condition or his potential need for leave in the future. (Rookard Dep. at 55:24-56:20, 65:8-66:14; 104:19-21; Rookard Decl. ¶ 9.) Further, Mr. Donald testified that Ms. Rookard did not speak to him about Plaintiff's medical condition, the reasons behind his need for a leave of absence, or his need for potential additional medical leave. (Donald Dep. at 52:20-54:4; 69:11-16, 91:14-18; Donald Decl. ¶¶ 5,7.) In fact, Mr. Donald had no knowledge regarding Plaintiff's medical condition or his need for potential additional leave. (Donald Dep. at 53:10-16; 69:11-16.) Furthermore, the City objects on the grounds that this fact is immaterial, because Plaintiff never ended up having the transplant at any point in 2021 or 2022 and never requested during his employment leave on a specific date associated with the hypothetical kidney transplant which never occurred. (Pl. Dep. at 45:20-24, 99:3-8, 116:7-12, 117:4, 117:15-120:7).  In turn, Plaintiff admitted that he received all of the sick leave he requested in connection with his prior leave of absence and was never denied the use of

any sick pool pay for leave that he actually took. (Pl. Dep. at 96:6-97:9, 112:11-113:7, 109:18-110:22, 111:9-24; Pl. Dep. Ex's 21 and 22).

15.     Mr. Sims began his FMLA leave on November 20, 2020, a week after Mr. Donald became City Administrator. (Sims Dep. at p. 95, ln. 2-4). Mr. Sims returned to work on February 25, 2020 (Sims Dep. at p. 112, ln. 20-22).

**Response:**     The City concedes the Court may properly consider this fact.

16.     After Mr. Sims returned from FMLA leave, Mr. Sims was excluded from director's meetings with housing community development. (Sims Dep. at p. 128, 4-18). This was one of the departments that Mr. Sims was responsible for overseeing. *Id.*

**Response:**     The City objects to this alleged fact as immaterial to the issues for the Court. First, Plaintiff admitted in his deposition that that nothing precluded the Administrator from meeting one on one with Directors. (Pl. Dep. at 130:9-16.) Second, even if Plaintiff was excluded from any meetings, such fact is immaterial to the instant litigation as such alleged exclusion did not result in a loss of pay or a demotion. (Pl. Dep. at 131:8-13, 129:20-131:13.)  Third, Plaintiff did not respond to any arguments in the City's Brief in Support of its Motion for Summary Judgment contending that aside from Plaintiff's termination, he did not sustain any other adverse employment actions, meaning that Plaintiff abandoned any argument that his alleged exclusions from meetings and Mr. Donald's alleged demeaning comments about Plaintiff's work can form the basis for an actionable adverse employment action.[3]  Fourth, Plaintiff's allegation that he was excluded from a meeting constitutes hearsay, because it was testified to by Plaintiff on behalf of Housing Development Director Hawthorne Welcher, who has not testified in this action. Defendant objects to the consideration of this testimony.  See Fed. R. Evid. 802.

---

[3] See n. 1, above.

17.     After his return from FMLA leave, Mr. Sims was also excluded from "meetings within the department, within the administrator's office, [and] with the other deputy and other administrators[.]" (Sims Dep. at p. 130, ln. 20-24).

**Response:**     The City objects to this testimony on the grounds that it is not supported by the record.  Plaintiff was only able to recall one meeting he was purportedly excluded from, which constitutes hearsay as noted above. (Pl. Dep. at 129:20-131:7.) Even if Plaintiff was left out of any additional meetings, such fact is immaterial to the instant litigation as such alleged exclusion did not result in a loss of pay or a demotion. (Pl. Dep. at 131:8-13.) This evidence is also completely immaterial, as Plaintiff did not respond to any arguments in the City's Brief in Support of its Motion for Summary Judgment contending that aside from Plaintiff's termination, he did not sustain any other adverse employment actions, meaning that Plaintiff abandoned any argument that his alleged exclusions from meetings and Mr. Donald's alleged demeaning comments about Plaintiff's work can form the basis for an actionable adverse employment action.[4] Further, Plaintiff admitted in his deposition that nothing precluded the Administrator from meeting one on one with Directors, and that he never experienced any loss of pay or a demotion as a result of being left out of any such meetings. (Pl. Dep. at 129:20-131:13.) Again, the only "meeting" Plaintiff specifically recalls being "excluded" from was a meeting between Mr. Donald and Director of Housing Development Hawthorne Welcher at some point between February 25, 2021 and April 1, 2021. (Pl. Dep. at 128:4-18, 142:23-143:11.)  He could not identify the participants or dates of any other alleged meetings that he was purportedly excluded from.  (Pl. Dep. at 129:20-131:7.)

18.     Mr. Sims was never provided an explanation as to why he was excluded from meetings he regularly attended prior to taking FMLA leave. (Sims Dep. at p. 132, ln. 16-19).

---

[4] See n. 1, above.

**Response:**     Once again, this evidence constitutes hearsay as described above, and is also completely immaterial, as Plaintiff did not respond to any arguments in the City's Brief in Support of its Motion for Summary Judgment contending that aside from Plaintiff's termination he did not sustain any other adverse employment actions, meaning that Plaintiff abandoned any argument that his alleged exclusions from meetings and Mr. Donald's alleged demeaning comments about Plaintiff's work can form the basis for an actionable adverse employment action.[5] Further, Plaintiff admitted in his deposition that nothing precluded the Administrator from meeting one on one with Directors, and that he never experienced any loss of pay or a demotion as a result of being left out of any such meetings. (Pl. Dep. at 129:20-131:13.) The only "meeting" Plaintiff specifically recalls being "excluded" from was a meeting between Mr. Donald and Director of Housing Development Hawthorne Welcher at some point between February 25, 2021 and April 1, 2021. (Pl. Dep. at 128:4-18, 142:23-143:11.)  He could not identify the participants or dates of any other alleged meetings that he was purportedly excluded from.  (Pl. Dep. at 129:20-131:7.)

19.     At the meetings that Mr. Sims was allowed to attend after his return from FMLA, Mr. Donald was publicly "very critical of [Mr. Sims'] work to the point where he made demeaning comments...in our small office meeting." (Sims Dep. at p. 139, ln. 3-22). Mr. Sims noted that his treatment was "totally different" after "coming back from FMLA." Sims Dep. at p. 139, ln. 17¬21).

**Response:**     Defendant objects on the grounds that this fact is immaterial.   In this regard, Plaintiff admitted that Mr. Donald made similar comments to the other Deputy Administrator, Mr. McDonald, that Mr. Donald's style was "direct" and that he did not mince words when he was critical of someone's work product, and that none of Mr. Donald's comments to Mr. Sims referenced his age, disability, or use of leave. (Pl. Dep. at 138:20-140:24.) Thus, he

---

[5] See n. 1, above.

cannot show that Mr. Donald treated him differently than a similarly situated comparator outside of his protected class, let alone that such comments or treatment had anything to do with a protected characteristic or the prior taking of leave.  In turn, Plaintiff fails to mention that when he returned from FMLA, the City was also under the leadership of a new Administrator. Mr. Donald took on his role as Administrator on November 14, 2020. (Donald Decl., ¶ 3.) Plaintiff began his FMLA leave on November 20, 2020. (Pl. Dep. at 92:5-93:9; 96:12-21; Pl. Dep. Ex's 15 & 17.) Plaintiff then returned to work on February 25, 2021. (Pl. Dep. at 111:9-24, 112:23-25; Pl. Dep. Ex. 22.) There is nothing remarkable about a new leadership style under these circumstances.

20.     Mr. Sims was terminated by Mr. Donald on April 1, 2021, 35 days after he returned to work. (Sims Dep, at p. 18, ln. 23 — p. 19, ln. 3) (Sims Dec., ¶19).

**Response:**     The City concedes the Court may properly consider this fact.

21.     As the head of his department, Mr. Donald had the "ability to hire and fire [employees in his office] within allowable rules and regulations and policy." (Donald Dep. at p. 38, ln. 16-18).

**Response:**     The City concedes the Court may properly consider this fact.

22.     Commencing in August of 2018, there existed a systematic protocol for contemplating the termination of any employee within the organization. This protocol necessitated the involvement of several key personnel: the City Administrator or, if unavailable, the Deputy City Administrator of the concerned department; the HR Director; the designated EEO official, and the appointed Attorney for the said department. (Sims Dec., ¶ 7).

**Response:**     Defendant objects to Plaintiff's Statement of Additional Facts No. 22 to the extent is in uncorroborated by testimony given by the City's 30(b)(6) representative or the City's Personnel Policy Manual.  Regardless, the testimony is completely immaterial, because "Plaintiff

must establish that Defendant deviated from its policy in a discriminatory manner." <u>Connelly v. WellStar Health System, Inc.</u>, 2018 WL 1835582, *2 (N.D. Ga. Feb. 28, 2018); <u>Rojas v. Florida</u>, 285 F.3d 1339, 1344 n.4 (11 Cir. 2022) ("To establish pretext, a plaintiff must show that the deviation from policy occurred in a discriminatory manner."); <u>Goddard v. City of Albany</u>, 2008 WL 794854, *9 (M.D. Ga. Mar. 20, 2008) ("Even assuming, in Plaintiff's favor, that Defendant Lott deviated from established City policies, there is no evidence that such deviation "occurred in a discriminatory manner.").  Here, it is undisputed that the same protocols for terminating the other Deputy Director – Mr. McDonald, who lacked any disability and never took leave – were followed in connection with his simultaneous termination.  Thus, Plaintiff cannot establish differential treatment.

23.     These protocols were upheld and followed by Mr. Donald's predecessor, Ms. Janice Jackson, and by Mr. Sims in his capacity as interim City Administrator. (Sims Dec., ¶ 9). Mr. Donald was also expected to apply the same protocols. (Sims Dec., ¶ 10).

**<u>Response:</u>**     Defendant objects to Plaintiff's Statement of Additional Facts No. 22 to the extent is in uncorroborated by testimony given by the City's 30(b)(6) representative or the City's Personnel Policy Manual. Regardless, the testimony is completely immaterial, because "Plaintiff must establish that Defendant deviated from its policy in a discriminatory manner." <u>Connelly v. WellStar Health System, Inc.</u>, 2018 WL 1835582, *2 (N.D. Ga. Feb. 28, 2018); <u>Rojas v. Florida</u>, 285 F.3d 1339, 1344 n.4 (11 Cir. 2022) ("To establish pretext, a plaintiff must show that the deviation from policy occurred in a discriminatory manner."); <u>Goddard v. City of Albany</u>, 2008 WL 794854, *9 (M.D. Ga. Mar. 20, 2008) ("Even assuming, in Plaintiff's favor, that Defendant Lott deviated from established City policies, there is no evidence that such deviation "occurred in a discriminatory manner.").  Here, it is undisputed that the same protocols for terminating the other

Deputy Director – Mr. McDonald, who lacked any disability and never took leave – were followed in connection with his simultaneous termination.   Thus, Plaintiff cannot establish differential treatment.

24.      Mr. Donald is of the opinion that he consulted with Wayne Brown (hereinafter, "Mr. Brown"), the City's General Counsel and Ms. Rookard prior to Mr. Sims' termination. (Donald Dep. at p. 45, ln. 17-22).

**Response:**      Defendants disputes Plaintiff's Statement of Additional Fact No. 24 to the extent that Mr. Donald did not definitely say he consulted with the City's General Counsel or Mr. Rookard. To the contrary, Mr. Donald testified that he "may have consulted with legal" and that Human Resources "may have been engaged" in the termination process. (Donald Dep. at 45:17-46:9.)  Regardless, the fact is immaterial as explained in response to paragraphs 23 and 24, above.

25.      However, Ms. Rookard maintains that Mr. Donald did *not* consult her about the termination of Mr. Sims prior to the same (Rookard Dep. at p. 31, ln. 6-9; p. 31, ln. 10-12). In fact, Ms. Rookard did not become aware that Mr. Donald wanted to terminate his Deputy Administrators until the day they were terminated, on April 1, 2021. (Rookard Dep. at p. 31, In. 1-5). (Sims Dec., ¶ 11).

**Response:**      The testimony is completely immaterial, because "Plaintiff must establish that Defendant deviated from its policy in a discriminatory manner." Connelly v. WellStar Health System, Inc., 2018 WL 1835582, *2 (N.D. Ga. Feb. 28, 2018); Rojas v. Florida, 285 F.3d 1339, 1344 n.4 (11 Cir. 2022) ("To establish pretext, a plaintiff must show that the deviation from policy occurred in a discriminatory manner."); Goddard v. City of Albany, 2008 WL 794854, *9 (M.D. Ga. Mar. 20, 2008) ("Even assuming, in Plaintiff's favor, that Defendant Lott deviated from established City policies, there is no evidence that such deviation "occurred in a discriminatory

manner."). Here, it is undisputed that the same protocols for terminating the other Deputy Director – Mr. McDonald, who lacked any disability and never took leave – were followed in connection with his simultaneous termination. Thus, Plaintiff cannot establish differential treatment.

26. Mr. Donald terminated Mr. Sims because he wanted to give the Office of the Administrator a "fresh start." (Donald Dep. at p. 59, ln. 17-24).

**Response:** The City concedes the Court may consider this fact.

27. The City's representative could not point to any written or informal policy in place that lets a supervisor get rid of existing subordinates in order to obtain a fresh start (Rule 30(b)(6) Deposition of the City, with Anita Rookard as designee ("30(b)(6) Dep.") at p. 20, ln. 23 — p. 21, ln. 6). (Sims Dec., ¶12).

**Response:** The City objects on the grounds that this alleged fact is immaterial. The material fact is that Odie Donald had the authority to terminate Plaintiff and McDonald either with or without cause. The City's policy manual or handbook does not list out every single reason for which someone can be terminated. As the 30(b)(6) representative testified, as an example, it would be grounds to terminate someone if they urinated intentionally on the floor of a bathroom, but the City's Handbook does not specifically address firing someone for that reason. The corporate designee further testified that an employee could be terminated for poor judgment, which is also not specifically listed in the handbook. Similarly, there is nothing in the handbook or policy manual which prohibits terminating an employee because the firing manager wanted a fresh start and to bring in their own team. See 30(b)(6) Dep. at 42:11-43:15. Nor does the law require every single reason for a termination to be spelled out in an employer's policy manual. The absence of a specific request to "fresh start" in the Handbook is completely unremarkable and immaterial.

28. It is common practice for City Administrators to "evaluate an organization and...

bring in staff' once they assume their position. (Donald Dep. at p. 47, ln. 24 — p. 48, ln. 5).

**Response:**     The City concedes the Court may properly consider this fact.

29.     However, it is not established policy for the City Administrator to replace the previous staff of the Office of the Administrator once a new City Administrator assumes the role. (Donald Dep. at p. 65, In. 7-15).

**Response:**     Defendant objects that the cited testimony does not support the assertion made. The City also objects on the grounds that this alleged fact is immaterial.  The material fact is that Odie Donald had the authority to terminate Plaintiff and McDonald either with or without cause.  The City's policy manual or handbook does not list out every single reason for which someone can be terminated.  As the 30(b)(6) representative testified, as an example, it would be grounds to terminate someone if they urinated intentionally on the floor of a bathroom, but the City's Handbook does not specifically address firing someone for that reason. The corporate designee further testified that an employee could be terminated for poor judgment, which is also not specifically listed in the handbook.  Similarly, there is nothing in the handbook or policy manual which prohibits terminating an employee because the firing manager wanted a fresh start and to bring in their own team. See 30(b)(6) Dep. at 42:11-43:15. Nor does the law require every single reason for a termination to be spelled out in an employer's policy manual.

30.     In fact, it is common for a new administration to retain individuals from the previous organization. (Sims Dep. at p. 163, ln. 14-18).

**Response**:     Defendant objects on the grounds that the alleged fact is immaterial. It is indisputably just as common for a new administration to change the existing staff. (Pl. Dep. at 135:12-16, 163:2-18; Donald Dep. at 47:23-48:11, 58:7-15, 60:5-12; Donald Decl. ¶ 13.)

31.     It is also customary for every department in the City of Augusta to do evaluations

of their employees. (Rookard Dep. at p. 47, ln. 2-5).

**Response:**     The City concedes the Court may consider the fact that Ms. Rookard

testified "[e]ach department does evaluations of its employees," but otherwise objects to this fact

as immaterial.  As counsel for Plaintiff pointed out during Ms. Rookard's deposition, there are no

evaluations in Plaintiff's personnel file, meaning no formal evaluations of Plaintiff occurred during

former Administrator Janice Jackson's tenure, during Plaintiff's tenure as Interim Administrator,

or during Mr. Donald's tenure. (Rookard Dep. at 47:6-21.) If an evaluation was conducted, it would

have appeared in Plaintiff's personnel file. (Rookard Dep. at 47:22-25.) The testimony is

completely immaterial, because "Plaintiff must establish that Defendant deviated from its policy

in a discriminatory manner." Connelly v. WellStar Health System, Inc., 2018 WL 1835582, *2

(N.D. Ga. Feb. 28, 2018); Rojas v. Florida, 285 F.3d 1339, 1344 n.4 (11 Cir. 2022) ("To establish

pretext, a plaintiff must show that the deviation from policy occurred in a discriminatory

manner."); Goddard v. City of Albany, 2008 WL 794854, *9 (M.D. Ga. Mar. 20, 2008) ("Even

assuming, in Plaintiff's favor, that Defendant Lott deviated from established City policies, there is

no evidence that such deviation "occurred in a discriminatory manner.").  Here, in addition to the

fact that Plaintiff was not formally evaluated by his prior supervisors, there is no record evidence

of an evaluation by Mr. Donald of the other deputy administrator who was simultaneously

terminated (Mr. McDonald – who lacked any disability and never took leave) either.

32.     When Mr. Donald became City Administrator in November of 2020, he did not

perform an evaluation of the staff working in the Office of the Administrator. (Donald Dep. at p.

40, ln. 15-23).

**Response:**     Defendant objects to Plaintiff's Statement of Additional Fact No. 34 to the

extent Plaintiff mischaracterizes Mr. Donald's testimony. In the cited testimony, Mr. Donald

testified that his evaluation was "probably less of a – a staff-only evaluation" but more of "an evaluation of the productivity of the City." (Donald Dep. at 40:15-23.)   The testimony is completely immaterial, because "Plaintiff must establish that Defendant deviated from its policy in a discriminatory manner." Connelly v. WellStar Health System, Inc., 2018 WL 1835582, *2 (N.D. Ga. Feb. 28, 2018); Rojas v. Florida, 285 F.3d 1339, 1344 n.4 (11 Cir. 2022) ("To establish pretext, a plaintiff must show that the deviation from policy occurred in a discriminatory manner."); Goddard v. City of Albany, 2008 WL 794854, *9 (M.D. Ga. Mar. 20, 2008) ("Even assuming, in Plaintiff's favor, that Defendant Lott deviated from established City policies, there is no evidence that such deviation "occurred in a discriminatory manner.").  Here, there is no record evidence of an evaluation by Mr. Donald of the other deputy administrator who was simultaneously terminated (Mr. McDonald – who lacked any disability and never took leave) either.

33.    Mr. Sims' personnel file, kept and updated by the Human Resources department, does not contain any evaluations of Mr. Sims by Mr. Donald. (Rookard Dep. at p. 47, ln. 19-25).

**Response:**     The testimony is completely immaterial, because "Plaintiff must establish that Defendant deviated from its policy in a discriminatory manner." Connelly v. WellStar Health System, Inc., 2018 WL 1835582, *2 (N.D. Ga. Feb. 28, 2018); Rojas v. Florida, 285 F.3d 1339, 1344 n.4 (11 Cir. 2022) ("To establish pretext, a plaintiff must show that the deviation from policy occurred in a discriminatory manner."); Goddard v. City of Albany, 2008 WL 794854, *9 (M.D. Ga. Mar. 20, 2008) ("Even assuming, in Plaintiff's favor, that Defendant Lott deviated from established City policies, there is no evidence that such deviation "occurred in a discriminatory manner.").   Here, again, there is no record evidence of an evaluation of the other deputy administrator who was terminated by Mr. Donald (Mr. McDonald – who lacked any disability and

never took leave) either, let alone evidence that Plaintiff was previously formally evaluated by his prior supervisors.

34.     Mr. Donald never conducted a formal evaluation of Mr. Sims's performance as Deputy City Administrator. (Donald Dep. at p. 51, ln. 9-13).

**<u>Response:</u>**     The testimony is completely immaterial, because "Plaintiff must establish that Defendant deviated from its policy in a discriminatory manner." <u>Connelly v. WellStar Health System, Inc.</u>, 2018 WL 1835582, *2 (N.D. Ga. Feb. 28, 2018); <u>Rojas v. Florida</u>, 285 F.3d 1339, 1344 n.4 (11 Cir. 2022) ("To establish pretext, a plaintiff must show that the deviation from policy occurred in a discriminatory manner."); <u>Goddard v. City of Albany</u>, 2008 WL 794854, *9 (M.D. Ga. Mar. 20, 2008) ("Even assuming, in Plaintiff's favor, that Defendant Lott deviated from established City policies, there is no evidence that such deviation "occurred in a discriminatory manner."). Here, there is no record evidence of an evaluation of the other deputy administrator who was terminated by Mr. Donald (Mr. McDonald – who lacked any disability and never took leave) either, let alone evidence that Plaintiff was previously formally evaluated by his prior supervisors.

35.     Mr. Donald is not aware that any individual working for the City of Augusta had a negative opinion of Mr. Sims' work performance. (Donald Dep. at p. 52, ln. 12-14).

**<u>Response:</u>**     The City objects because this fact is immaterial as that is not the reason why Plaintiff or Mr. McDonald were terminated.

36.     Ms. Rookard is not aware of any complaints or negative reviews made about Mr. Sims. (Rookard Dep. at p. 45, ln. 24 — p. 46, ln. 1).

**<u>Response:</u>**     The City objects because this fact is immaterial as that is not the reason why Plaintiff or Mr. McDonald were terminated. She was also not the decisionmaker. (Rookard

Dep. at 30:18-31:19, 31:20-32:16; Donald Decl. ¶ 14.)

37.     Ms. Rookard is not aware of any complaints made about Mr. Sims' work performance.

**Response:**     The City objects because this fact is immaterial as that is not the reason why Plaintiff or Mr. McDonald were terminated.  She was also not the decisionmaker. (Rookard Dep. at 30:18-31:19, 31:20-32:16; Donald Decl. ¶ 14.)

38.     Ms. Rookard had no reason to believe that Mr. Sims was not qualified for his role as the interim City Administrator or Deputy City Administrator. (Rookard Dep. at p. 46, ln. 10-13).

**Response:**     The City objects because this fact is immaterial as that is not the reason why Plaintiff or Mr. McDonald were terminated.  She was also not the decisionmaker. (Rookard Dep. at 30:18-31:19, 31:20-32:16; Donald Decl. ¶ 14.)

39.     Mr. Sims and Mr. McDonald, both Deputy Administrators, were terminated by Mr. Donald on April 1, 2021. (Donald Dep. at p. 72, ln. 20-22).

**Response:**     The City concedes the Court may properly consider this fact, which completely supports the summary judgment motion.

40.     Mr. Donald terminated Mr. Sims five months after Mr. Donald assumed his role as City Administrator. Mr. Donald's explanation for the gap is that he first had to (1) come in and "find [his] way around the building," (2) evaluate the budget, (3) evaluate what the Commission is desiring from the organizations, and (4) evaluate what the citizens would like to see. (Donald Dep. at p. 48, ln. 12-25).

**Response:**     The City concedes the Court may properly consider this fact.

41.     Mr. Donald does not recall having any conversations with Mr. Sims after his return

from FMLA leave about Mr. Donald's vision for the new Office of the Administrator. (Donald Dep. at p. 66, ln. 22 — p. 67, ln. 1).

**<u>Response:</u>**     The City concedes the Court may properly consider this fact. Ultimately, however, it is immaterial because there is no record evidence of a similar discussion with Mr. McDonald either.

42.     Mr. Donald cannot recall if he ever evaluated Mr. Sims to determine whether his skill set aligned with the goals that Mr. Donald had for the Office of the Administrator. (Donald Dep. at p. 61, ln. 1-4).

**<u>Response:</u>**      The City concedes the Court may properly consider this fact. Ultimately, however, it is immaterial because there is no record evidence of a similar discussion with Mr. McDonald.

43.     Prior to terminating Mr. Sims, Mr. Donald did not perform any kind of evaluation to determine if Mr. Sims was a good fit for another position within his Office. (Donald Dep. at p. 52, ln. 15-19).

**<u>Response:</u>**     The City objects to Plaintiff's Statement of Additional Fact No. 43 on the grounds it is immaterial.  At no point prior to Plaintiff's April 1, 2021 termination did he ever ask to be demoted, reassigned, or to be retrained as a result of his medical condition.  (Pl. Dep. at 170:23-172:6.)  It is also immaterial because there is no evidence of an evaluation of Mr. McDonald – who was terminated the same day for the same reason – either.

44.     Prior to Mr. Sims' termination, Mr. Donald did not have any discussion with Mr. Sims about his imminent termination. (Donald Dep. at p. 47, ln. 16-23).

**<u>Response:</u>**     The City objects to Plaintiff's Statement of Additional Fact No. 44 on the grounds it is immaterial. There is no evidence that Mr. Donald had a similar conversation with Mr.

McDonald, who was terminated the same day for the same reasons and who does not share the same protected characteristics.

45.     Mr. Sims was notified of his termination on April 1, 2021 at a meeting with Ms. Rookard and Mr. Donald, where they handed him a letter of termination. (Sims Dep. at p. 150, ln. 3-14)

**Response:**     The City concedes the Court may properly consider this fact

46.     Mr. Donald never provided Mr. Sims with a specific reason as to why he was being terminated. (Sims Dep. at p. 161, ln. 15-16).

**Response:**     The City objects as unsupported by the record. Mr. Donald, as well as Plaintiff's termination letter, informed Plaintiff he was being terminated to give the Office of the Administrator a "fresh start." (Pl. Dep. at 149:21-151:18, 151:19-150:20; Pl. Dep. Ex. 29; Donald Dep. at 46:23-47:15; Donald Dep. Ex. 4; Donald Decl. ¶ 15, Ex. A.) The City also objects that this fact is immaterial.  There is no evidence that Mr. Donald had a different conversation with or provided a different or additional explanation to Mr. McDonald, who was terminated the same day for the same reasons and who does not share the same protected characteristics.

47.     At the meeting, he asked Ms. Rookard how this would affect his kidney disease, as he needed insurance for continuous treatment. (Sims Dep. at p. 151, ln. 2-6). In response, Ms. Rookard and Mr. Donald shoved their shoulders. (Sims Dep. at p. 151, ln. 6-8; p. 151, ln. 16-18). Ms. Rookard and Mr. Donald told Mr. Sims that the termination was effective immediately and that he needed to leave the building as soon as possible. (Sims Dep. at p. 153, ln. 4-8).

**Response:**     The City objects to Plaintiff's Statement of Additional Fact No. 47 on the grounds it is immaterial because there is no evidence that Mr. Donald was even aware of Plaintiff's medical condition prior to the termination. (Donald Dep. at 53:13-16.) Additionally, Mr.

McDonald, who was terminated the same day for the same reasons and who does not share the same protected characteristics, was treated in the exact same manner. (Donald Dep. at 70:8-11; Donald Decl. at ¶¶ 11-15, Ex. A; 30(b)(6) Dep. at 10:19-11:19; 22:16-19.)

48.    Mr. Donald did not have a person in mind to replace Mr. Sims when he fired him. (Donald Dep. at p. 49, ln. 1-3).

**Response:**    The City also objects to Plaintiff's Statement of Additional Fact No. 48 on the grounds it is immaterial. Mr. McDonald, who was terminated the same day for the same reasons and who does not share the same protected characteristics, was treated in the exact same manner.

49.    Mr. Donald did not hire a new Deputy Administrator to replace Mr. Sims until August 7, 2021, 128 days after his termination. (Donald Dep. at p. 72, ln. 20-22).

**Response:**    The City objects that Plaintiff's fact is partially unsupported by the record, to the extent that Mr. Donald hired one Deputy Administrator on May 15, 2021. (Donald Decl. at ¶19; Rookard Decl. at ¶ 8.) Mr. Donald then hired the second Deputy Administrator on August 7, 2021. (Donald Decl. at ¶ 19; Rookard Decl. at ¶ 6.)

Respectfully submitted, this 23rd day of October 2023.

**FREEMAN MATHIS & GARY, LLP**

*/s/ John D. Bennett*
John D. Bennett
Georgia Bar No. 059212
Emily M. Walker
Georgia Bar No. 221826
*Attorneys for Defendant*

100 Galleria Parkway
Suite 1600
Atlanta, Georgia 30339-5948
T: (770) 818-0000
F: (770) 937-9960
E: jbennett@fmglaw.com
E: emily.walker@fmglaw.com

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed this DEFENDANT'S RESPONSE TO PLAINTIFF'S <u>STATEMENT OF ADDITIONAL FACTS</u> with the Clerk of Court using the CM/ECF system, which will automatically send an email notification of said filing to counsel of record.

This 23rd day of October 2023.

**FREEMAN MATHIS & GARY, LLP**

*/s/ John D. Bennett*
John D. Bennett
Georgia Bar No. 059212
Emily M. Walker
Georgia Bar No. 221826
*Attorneys for Defendant*

100 Galleria Parkway
Suite 1600
Atlanta, Georgia 30339-5948
T: (770) 818-0000
F: (770) 937-9960
E: jbennett@fmglaw.com
E: emily.walker@fmglaw.com