UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| JARVIS SIMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.: |
| | ) | 1:22-cv-00099-JRH-BKE |
| CITY OF AUGUSTA-RICHMOND COUNTY | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S REPLY BRIEF IN SUPPORT
## OF ITS MOTION FOR SUMMARY JUDGMENT

## INTRODUCTION

Summary judgment is plainly due in this case. As an initial matter, in addition to admitting almost all of the undisputed material facts set forth in the City's Motion,[1] Plaintiff concedes that summary judgment is due to the City on his ADEA claim (Count IV). (Doc. 45-2 at p. 23). As such, Plaintiff's only remaining claims are those brought pursuant to the ADA and FMLA. Additionally, the only alleged adverse action Plaintiff bases his arguments on is his termination. (Id. at pp. 9, 16 ("Here, Plaintiff was subjected to an adverse action – termination…")). As Plaintiff did not respond to arguments in the City's Motion for Summary Judgment contending that aside from Plaintiff's termination, he did not sustain any other adverse employment actions, Plaintiff abandoned any argument that his alleged exclusions from meetings and Mr. Donald's purported critical comments about Plaintiff's work following his return from leave can form the basis for an actionable adverse employment action in support of either his ADA or FMLA discrimination or

---

[1] The vast majority of the material facts at issue in this motion are either completely undisputed or were not properly controverted by Plaintiff. In response to Defendant's Statement of Undisputed Material Facts (Doc. 42-2), Plaintiff has expressly admitted ¶¶ 1-53, 55-58, 60-65, 68-73, 75-79, 81-86, 88-93, 96, 98-100, and 103-116. (Doc. 45). The remainder of the facts set forth by the City were not properly controverted. (Doc. 42-2; Doc. 45).

retaliation claims.[2]

Plaintiff also wastes most of his brief arguing about issues that the City has conceded, such as whether Plaintiff was disabled or engaged in protected activity for purposes of establishing a *prima facie* case in support of his termination and retaliation claims (Doc. 45-2 at pp. 8-16), bizarrely challenges the City's legitimate, non-discriminatory explanation for his separation (id. at pp. 17-18), and then basically glosses over the critical pretext analysis.  (Id. at pp. 18-20). According to Plaintiff, Mr. Donald's desire for a "fresh start" for the Office of the Administrator was pretextual for three reasons: (1) the HR Director was not involved in the decision to terminate Plaintiff prior to the termination meeting; (2) there is no policy of the City which expressly contemplates terminating an employee because of a desire to give the organization a "fresh start"; and (3) Plaintiff contends Mr. Donald never evaluated Plaintiff prior to making the decision that he was not a good fit for his vision of the organization. (Id. at pp. 18-19).

None of Plaintiff's arguments are compelling.  Plaintiff is essentially attempting to quibble with the proffered explanations of the City, rather than to meet them head on and rebut them. Under clearly established law, these feeble efforts do not establish pretext.  "Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and [he] cannot succeed by simply quarreling with the wisdom of that reason." Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1265-66 (11th Cir. 2010) (quoting Chapman v. AI Transp., 229 F.3d 1012, 1030 (11th Cir. 2000) (*en banc*)).  Moreover, "Plaintiff must establish that Defendant deviated from its policy [or practices] in a discriminatory manner." Connelly v. WellStar Health System, Inc., 2018 WL 1835582, *2 (N.D. Ga. Feb. 28, 2018); Rojas

---

[2] "When a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned." Hudson v. Norfolk Southern Railroad Co., 209 F. Supp. 2d 1301, (N.D. Ga. 2001) (citing Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995)). See also Cellco Partnership v. City of Valdosta, 574 F.Supp.3d 1318, 1336 n. 10 (M.D. Ga. 2021) (same).

v. Florida, 285 F.3d 1339, 1344 n.4 (11 Cir. 2022) ("To establish pretext, a plaintiff must show that the deviation from policy occurred in a discriminatory manner."); Goddard v. City of Albany, 2008 WL 794854, *9 (M.D. Ga. Mar. 20, 2008) ("Even assuming, in Plaintiff's favor, that Defendant Lott deviated from established City policies, there is no evidence that such deviation "occurred in a discriminatory manner."). Here, it is undisputed that the same protocols for terminating the other Deputy Director – Mr. McDonald, who lacked any disability, never took leave, and was terminated the exact same day for the same reasons – were followed in connection with his termination. Thus, Plaintiff cannot establish differential treatment and does not come close to establishing pretext.

Indeed, throughout his entire summary judgment opposition brief, Plaintiff tellingly ignores the glaring fact that the City treated both Plaintiff and Mr. McDonald the exact same way during the termination process. The reason is obvious – the Administrator's identical treatment of Plaintiff and Mr. McDonald is fatal to his claims. This is a very easy and straightforward case. Summary judgment remains due on each of Plaintiff's claims.

## ARGUMENT AND CITATION OF LEGAL AUTHORITY

**A.    Plaintiff's Assertion That Administrator Odie Donald Knew About Plaintiff's Medical Condition, the Reasons Behind His FMLA Leave, and His Potential Need for Leave in the Future is Entirely Without Factual Support.**

Throughout Plaintiff's factual and legal arguments, Plaintiff operates under two uncorroborated factual assertions: (1) Mr. Donald received a copy of Plaintiff's FMLA paperwork, thus implicitly informing him of Plaintiff's medical condition; and (2) Ms. Rookard purportedly informed Mr. Donald about Plaintiff potentially needing additional leave in the future. Neither of these speculative assertions are supported by the record.

First, Plaintiff entirely makes up the assertion that Mr. Donald received a copy of Plaintiff's

FMLA paperwork. What the record actually establishes is that when an employee is approved for FMLA leave, the Human Resources Department simply notifies the individual's department or supervisor that he or she will be out on FMLA. (Rookard Dep. at 27:18-24; Donald Dep. 52:20-54:4.) Nowhere in the record does Plaintiff establish any disputed fact as to whether or not Mr. Donald ever received a copy of Plaintiff's FMLA paperwork. In this regard, when Mr. Donald was asked if he was aware that Plaintiff took medical leave, Mr. Donald responded that he was told that Plaintiff was "taking some time off for FMLA." (Donald Dep. at 52:20-25) Further, when Mr. Donald was asked whether he remembered reviewing any kind of documentation regarding Plaintiff's leave or medical condition, Mr. Donald responded, "No, I would not. I would not. That would not come to me." (Donald Dep. at 53:21-24.) In essence, Plaintiff tries to depict a false narrative that Mr. Donald was aware of his medical condition and the reasons behind his requested leave, but it is a narrative without any factual support. To the contrary, Mr. Donald explicitly testified that he had no knowledge of Plaintiff's medical condition or his need for leave. (Donald Dep. at 52:20-54:4, Donald Decl. ¶ 5.)[3]  In turn, Plaintiff expressly admitted that he never had any discussions with Mr. Donald regarding the nature of his medical condition or the reasons for his leave of absence, and it is completely uncontroverted that neither Ms. Rookard nor anyone else spoke to Mr. Donald about the nature of Plaintiff's medical condition or the reasons behind his

---

[3] To the extent Plaintiff tries to create a factual question by contending that Defendant's Statement of Fact Nos. 54 and 102 are in dispute, Plaintiff fails to point to a citation in the record contradicting Defendant's assertion that Mr. Donald did not have knowledge about Plaintiff's medical condition or the reasons behind his need for leave (or potential need for future leave). Again, Ms. Rookard (the HR Director) testified that prior to Plaintiff's FMLA leave, "Mr. Donald received a phone call that Mr. Sims would be out for FMLA, and he probably did receive a document, either he did or his administrative assistant received the FMLA documentation stating that he would be out." But it is undisputed that neither Ms. Rookard nor anyone else spoke to Mr. Donald about the nature of Plaintiff's *medical condition*, and in fact, Mr. Donald had no knowledge regarding Plaintiff's medical condition or the reasons behind his need for a leave of absence. (Donald Dep. at 52:20-54:4; Rookard Dep. at 55:24-56:20, 65:8-66:14; Pl. Dep. 101:5-102:20; Donald Decl. ¶ 5.; Rookard Decl. ¶ 9) In turn, at no point did Plaintiff, Ms. Rookard, or anyone else inform Mr. Donald that Plaintiff *might **potentially** need additional medical leave in the future* following his February 25, 2021 return to work.  (Pl. Dep. at 101:5-19; Donald Decl. ¶ 7; Rookard Dep. at 19-21; Donald Dep. at 69:11-16, 91:14-18; Rookard Decl. ¶ 9.)

need for a leave of absence. (Donald Dep. at 110:19-111:1, 113:23-114:5; Rookard Dep. at 55:24-56:20, 65:8-66:14; Pl. Dep. 101:5-102:20; Donald Decl. ¶ 5.; Rookard Decl. ¶ 9).  Plaintiff's attempt to take liberties with the record is unwarranted and unfounded.

Second, Plaintiff's belief that Ms. Rookard informed Mr. Donald of his potential need for leave in the future is entirely speculative. For the first time in Plaintiff's Declaration, he contends that following his discussion with Ms. Rookard regarding his potential need for leave in the future for a kidney transplant, Ms. Rookard informed him "that she would discuss and clarify [his] situation with Mr. Donald." (Plaintiff Decl., ¶ 16.) Plaintiff then inferred from Ms. Rookard's alleged comment that she was going to discuss his medical condition and his need for potential future leave for a transplant with Mr. Donald. (Plaintiff Decl., ¶ 18.) While Plaintiff may speculate that Ms. Rookard spoke to Mr. Donald about his medical condition and possible need for additional leave, the record is clear that said conversation never actually occurred.  Again, Ms. Rookard unequivocally testified in her deposition that she never spoke to Mr. Donald about Plaintiff potentially needing additional medical leave in the future, and Mr. Donald confirmed in both his deposition and declaration that neither Ms. Rookard nor anyone else informed him that Plaintiff might potentially need additional medical leave. (Pl. Dep. at 101:5-19; Donald Decl. ¶ 7; Rookard Dep. at 19-21; Donald Dep. at 69:11-16, 91:14-18; Rookard Decl. ¶ 9.) Plaintiff's uncorroborated belief and speculation[4] that Ms. Rookard might have spoken to Mr. Donald about his medical

---

[4] "Although all justifiable inferences are to be drawn in favor of the nonmoving party, inferences based upon speculation are not reasonable. Evidence that is merely colorable, or is not significantly probative of a disputed fact cannot satisfy a party's burden, and a mere scintilla of evidence is likewise insufficient." Kernel Records Oy v. Mosley, 694 F.3d 1294, 1301 (11th Cir. 2012) (quotations and internal citations omitted); Cordoba v. Dillard's Inc., 419 F.3d 1169, 1181 (11th Cir. 2005) ("Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." (emphasis in original) (quotation omitted)). "[A]n inference is not reasonable if it is only a guess or a possibility, for such an inference is not based on the evidence but is pure conjecture and speculation." Daniels v. Twin Oaks Nursing Home, 692 F.2d 1321, 1324 (11th Cir. 1982) (quotation omitted); see also Hinson v. Bias, 927 F.3d 1103, 1115 (11th Cir. 2019) ("[A]n inference based on speculation and conjecture is not reasonable." (quotation omitted)).

condition – an allegation that has been directly refuted by both Ms. Rookard and Mr. Donald – does not create a jury question as to whether Mr. Donald was aware of Plaintiff's medical condition or potential need for additional leave when the termination decision was made.[5]

**B.   Plaintiff's Argument as to the City's Legitimate, Non-Discriminatory, and Non-Retaliatory Explanation is Baseless.**

While Plaintiff contends that there is a genuine issue as to whether the City presented a legitimate, nondiscriminatory, nonretaliatory reason for terminating him, Plaintiff fails to provide a single case citation in support of his argument that wanting a "fresh start" is not a legitimate explanation. Plaintiff does not even attempt to address the line of cases cited by the City in its Motion for Summary Judgment supporting the contention that wanting to bring in one's own team is a legitimate, non-discriminatory reason for terminating an employee. But this Court, among other courts, have frequently upheld similarly articulated explanations in analogous decisions.[6]

Plaintiff apparently wants to argue that the City's proffered reason is "another way of saying that the [City] fired Plaintiff without any reason." [Doc. 45-2, p. 17.] In making this

---

[5] Plaintiff disputes Defendant's Statement of Fact No. 80 based on his belief that Ms. Rookard allegedly indicated that she would discuss Plaintiff's "situation" with Mr. Donald. Defendant's Statement of Fact No. 80 provides that, "At no point did Plaintiff, Ms. Rookard, or anyone else inform Mr. Donald that Plaintiff might potentially need additional medical leave in the future following his February 25, 2021 return to work.  (Pl. Dep. at 101:5-19; Donald Decl. ¶ 7; Rookard Dep. at 19-21; Donald Dep. at 69:11-16, 91:14-18; Rookard Decl. ¶ 9.)" Plaintiff has not pointed to anything in the record to contradict this statement of material fact, and as such, it must be deemed undisputed.

[6] See, e.g., Mawulawde v. Bd. of Regents of Univ. Sys. of Georgia, No. CV 105-099, 2009 WL 10678751, at *16 (S.D. Ga. Mar. 27, 2009) (JHR), aff'd, 372 F. App'x 51 (11th Cir. 2010) (finding that a new chief wanting to bring on his own team of surgeons was a legitimate, non-discriminatory reason for terminating the plaintiff).  Other district courts within the Eleventh Circuit have as well.  See, e.g., Rossi v. Fulton Cnty., Ga., No. 1:10-CV-4254-RWS-AJB, 2013 WL 1213149 (N.D. Ga. Jan. 31, 2013), report and recommendation adopted sub nom. Rossi v. Fulton Cnty. Bd. of Assessors/Fulton Cnty. Tax Assessors Off., No. 1:10-CV-4254-RWS, 2013 WL 1213139, at *24 (N.D. Ga. Mar. 22, 2013) (finding terminating the plaintiff because the office was going in a "new direction" was a legitimate, nondiscriminatory explanation); Morris v. Bessemer Bd. of Educ., No. CV-10-BE-2402-S, 2013 WL 549896, at *16 (N.D. Ala. Feb. 13, 2013) (acknowledging "that the Board's articulated reason for not renewing Morris's Head Coach job – wanting to move in a new direction in the hopes of ultimately securing a state basketball title – is a legitimate, non-retaliatory reason"). See also Davis v. New York City Health & Hosps. Corp., 640 F. Supp. 155, 159 (E.D.N.Y. 1986) (finding that the employer advanced a legitimate, non-discriminatory reason for seeking plaintiff's resignation, i.e., the new executive director wished to bring in his own team of associates).

argument, Plaintiff seemingly believes that the City must or should have articulated a ***better*** or more ***specific reason*** for terminating Plaintiff.  But that belief is a legal falsehood. It is well settled that an "employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for **no reason at all**, as long as its action is not for a discriminatory reason." Nix v. WLCY Radio/Rahall Commc'ns, 738 F.2d 1181, 1187 (11th Cir. 1984) (emphasis in bold). "While [the City's] judgment or course of action may seem poor or erroneous to [Plaintiff], the relevant question is simply whether the given reason was a pretext for illegal discrimination." Id. (citing Loeb v. Textron, Inc., 600 F.2d 1003, 1012 n. 6. (1st Cir. 1979)). At this stage, where the City's burden is "exceedingly light," Perryman v. Johnson Prods. Co., 698 F.2d 1138, 1142 (11th Cir. 1983), Plaintiff's baseless opposition as to the City's position in this regard is vexatious and warrants little analysis by the Court.   See also Flournoy v. CML-GA WB, LLC, 851 F.3d 1335, 1339 (11th Cir. 2017) (affirming summary judgment in employment discrimination case and observing that the legitimate, non-discriminatory explanation burden is "exceedingly light").

**C.** **Plaintiff Has Woefully Failed to Establish Pretext.**

Plaintiff first seeks to create an issue of material fact as to pretext by arguing that Plaintiff's termination "deviated significantly from protocol for terminating employees." [Doc. 45-2, p. 18.] This is purportedly because the City's HR Director and City Attorney should have been consulted in advance and involved in the decision-making process.   [Id.]   It is unclear how Plaintiff determined what the protocol was for terminating past Deputy Administrators, as there is no record evidence that Plaintiff was ever present for a termination of a Deputy Administrator.  Thus, no record evidence supports this contention.

Regardless, even if there was a deviation from established practice based on the HR Director's lack of involvement in the decision-making process, said deviation "does not raise an

inference of discrimination." Mitchell v. USBI Co., 186 F.3d 1352, 1355 (11th Cir. 1999). "Standing alone, deviation from a company policy does not demonstrate discriminatory animus." Id. at 1355-56. In this regard, Plaintiff does not dispute that Mr. Donald – the City Administrator – actually had the authority to hire and fire his own Deputy Administrators. (See Plaintiff's Response to Defendant's Statement of Material Facts No. 4.)[7] It is also undisputed that the City does not have any written policy requiring that Human Resources be involved in the termination of a Deputy Administrator before any such decision is made. As it was within Mr. Donald's discretion to handle the termination process as he saw fit, his alleged failure to follow Plaintiff's alleged termination protocol does not demonstrate pretext. See, e.g., Coleman v. Alabama State Univ., 904 F. Supp. 2d 1245, 1259 (M.D. Ala. 2012) (citing Ritchie v. Indus. Steel, Inc., 426 F. App'x. 867, 873 (11th Cir.2011)) ("An employer's failure to follow that policy, however, does not show pretext 'if management has discretion as to whether to follow the discipline policy.'"). But most importantly, Mr. Donald's alleged "deviation" from prior practice applied *equally* to both Plaintiff and Mr. McDonald – who was terminated on the same day for the same reasons – under the same protocols. Plaintiff tries to ignore this fact, but there is simply no evidence that the HR Director was involved in the decision-making surrounding the desire to terminate Mr. McDonald but not the decision to terminate Plaintiff.  Accordingly, no inference of pretext can be shown.[8]

---

[7] Plaintiff admitted that "[t]he Administrator is responsible for hiring and firing his or her own Deputy Administrators and other individuals within the Office of the Administrator."  Plaintiff's Response to Defendant's Statement of Material Facts No. 4 [Doc. 45].

[8] Plaintiff must establish that Defendant deviated from its policy in a discriminatory manner."  Connelly v. WellStar Health System, Inc., 2018 WL 1835582, *2 (N.D. Ga. Feb. 28, 2018); Rojas v. Florida, 285 F.3d 1339, 1344 n.4 (11 Cir. 2022) ("To establish pretext, a plaintiff must show that the deviation from policy occurred in a discriminatory manner."); Goddard v. City of Albany, 2008 WL 794854, *9 (M.D. Ga. Mar. 20, 2008) ("Even assuming, in Plaintiff's favor, that Defendant Lott deviated from established City policies, there is no evidence that such deviation "occurred in a discriminatory manner.").  Here, it is undisputed that the same protocols for terminating the other Deputy Director – Mr. McDonald, who lacked any disability and never took leave – were followed in connection with his termination.  Thus, Plaintiff cannot establish differential treatment.

Next, Plaintiff argues that Mr. Donald's failure to perform any formal evaluation of Plaintiff prior to his separation demonstrates pretext. Mr. Donald, however, did not terminate Plaintiff because of poor performance – rather, Mr. Donald terminated both Plaintiff and Mr. McDonald based on his evaluation of the Office of the Administrator as a whole and his desire to give the organization a fresh start. (See Donald Dep. at 48:12-25; 47:23-48:11, 58:7-15, 60:5-12; Donald Decl. ¶¶ 11, 13.) In turn, it should be noted that while Plaintiff seemingly believes it discriminatory that Mr. Donald did not conduct a formal evaluation of him prior to separation, Plaintiff has given no record evidence of *any* sort of formal evaluation during his entire employment with the City, including by the prior Administrator. Most critically, there is also no record evidence that Mr. Donald performed a formal evaluation of Mr. McDonald, the other Deputy Director who was terminated on the same day for the same reasons.  Thus, this is yet another "fairness" argument which entirely fails to establish a genuine issue of fact as to pretext.

Lastly, Plaintiff tries to establish pretext by pointing to the four month gap between Plaintiff's termination and the hiring of Tanikia Jackson on August 7, 2021. In doing so, Plaintiff ignores the fact that Mr. Donald hired Charles Jackson on May 15, 2021 – a little over a month after Plaintiff's and Mr. McDonald's terminations. (Donald Decl. at ¶19; Rookard Decl. at ¶ 8.) Regardless, this is yet another nitpick, "super-personnel" argument which completely fails to establish pretext.[9]  It also ignores the fact that the City had a period of time following the separations of Plaintiff and Mr. McDonald in which it was necessary to post the openings, review resumes, conduct interviews, etc.  (Donald Decl. ¶ 19).  Such a delay is entirely unremarkable in the context of local government.  Regardless, this delay in no way establishes that Plaintiff's use

---

[9] "Title VII does not empower a court (or jury) to 'sit as a super-personnel department that reexamines an entity's business decisions.'" Thomas v. Sheriff of Jefferson County, Ala., 2023 WL 6534602, *6 (11th Cir. Oct. 6, 2023) (quoting Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991)).

of FMLA leave or his medical condition/disability had any connection whatsoever to his termination.

Overall, Plaintiff tries to paint a picture of pretext by ignoring the vital facts in the record. Plaintiff believes he was treated differently following his return from FMLA, but ignores the reality that when he returned from FMLA leave, a new Administrator with directives to improve the organization had taken over. Plaintiff also contends that Mr. Donald was critical of his work and made some less than pleasant comments but ignores his own testimony where he admits that Mr. Donald made similar comments to Mr. McDonald, the other Deputy Administrator. (Pl. Dep. at 138:20-140:24.) Plaintiff was never singled out – not in Mr. Donald's managerial style nor Mr. Donald's termination decision – but most importantly, the law does not embody a civility code, and rudeness does not establish discrimination or retaliation. But of course, the most important fact that the Plaintiff chooses to ignore is likely the most important one to this case – Mr. Donald terminated **both** Deputy Administrators at the same time and for the same reasons. Critically, Mr. McDonald did not suffer from any known disabilities, did not take FMLA leave, and did not request any reasonable accommodations. (Pl. Dep. 157:2-19; 30(b)(6) Dep. 10:19-11:19). The simple truth of the matter is Mr. Donald wanted to bring in his own staff and give the Office of the Administrator a "fresh start." Plaintiff thus cannot put forth any evidence to create a triable issue of pretext as to this legitimate, non-discriminatory, and non-retaliatory explanation, and thus the City is entitled to summary judgment as to Plaintiff's discrimination and retaliation claims.

Finally, it is worth reminding that while Plaintiff attempts to rely on the alleged close "temporal proximity" between his prior use of leave and his termination in the causation section of his brief (which addresses the *prima facie* case),[10] the Eleventh Circuit has repeatedly made

---

[10] The Eleventh Circuit has instructed that "when an employer has offered a legitimate, nondiscriminatory reason for an employee's termination, whether a plaintiff made out a prima facie case is almost always irrelevant in

clear that "temporal proximity by itself generally cannot prove that an employer's proffered reasons are pretextual." <u>Todd v. Fayette Cnty. Sch. Dist.</u>, 998 F.3d 1203, 1219–20 (11th Cir. 2021); <u>see also Gogel v. Kia Motors Mfg. of Ga., Inc.</u>, 967 F.3d 1121, 1137, n.15 (11th Cir. 2020) (en banc) (same); <u>A.P. v. Fayette County School District</u>, 2023 WL 4174070, *10 (11th Cir. June 26, 2023) ("But temporal proximity can't, by itself, show pretext.")[11]  Thus, temporal proximity does not establish pretext standing alone, which is exactly where it stands in relation to this case. Accordingly, summary judgment remains due on Plaintiff's ADA and FMLA discrimination and retaliation claims.

**D.  The City Granted Every Single One of Plaintiff's Requests for Leave, and As Such, the City Did Not Fail to Reasonably Accommodate Plaintiff.**

Despite the fact that Plaintiff admittedly received all of the leave that he actually requested, and that he ***never actually*** had a kidney transplant in 2020, 2021, 2022, or any time material to this motion, Plaintiff has shockingly not conceded that summary judgment is due on his ADA failure to accommodate claim, which is purportedly based on the denial of a request for additional leave based on the kidney transplant that ***never happened***.  (Doc. 45-2, pp. 20-23).  Plaintiff's continued opposition to summary judgment on this claim is frivolous.

Again, it is undisputed that Plaintiff first requested FMLA leave from December 15, 2020 through February 15, 2021, which the City agreed to provide. (Pl. Dep. at 87:4-11, 88:9-17; Pl. Dep. Ex. 11, 12.) Plaintiff then requested to push the start date of his FMLA leave to November

---

considering a motion for summary judgment." <u>Morrison v. City of Bainbridge, GA</u>, 432 Fed.Appx. 877, 881 n. 2 (11th Cir. 2011).  <u>See also Thomas v. Walmart Inc.</u>, 2023 WL 5926891, *8 (N.D. Ga. July 12, 2023).

[11] While close temporal proximity between the protected conduct and the adverse employment action can establish pretext ***when coupled*** with other evidence, temporal proximity alone is plainly insufficient. <u>See Johnson v. Miami-Dade Cnty.</u>, 948 F.3d 1318, 1328 (11th Cir. 2020) (temporal proximity of less than two months was insufficient by itself); <u>Hurlbert v. St. Mary's Health Care Sys., Inc.</u>, 439 F.3d 1286, 1298 (11th Cir. 2006) (the close temporal proximity of two weeks was "insufficient to establish pretext by itself"); <u>Wascura v. City of South Miami</u>, 257 F.3d 1238, 1244–45 (11th Cir. 2001) (same).

20, 2020, and yet again, the City accommodated the request. (Pl. Dep. at 91:15-93:9, 96:12-21; Pl. Dep. Ex.'s 14-15, 17.) Next, Plaintiff requested to extend his leave through February 25, 2021. (Pl. Dep. at 107:4-109:6; Pl. Dep. Ex. 20.) Once again, the City granted Plaintiff's request for additional leave, despite his FMLA entitlement expiring on February 15, 2021. (Pl. Dep. at 109:7-17, 112:14-16.) Moreover, Plaintiff admits that the extended leave after he exhausted his FMLA was paid through the sick pool bank.  (Pl. Dep. at 109:18-110:22, 111:9-24; Pl. Dep. Ex's 21 and 22).  Finally, to the extent Plaintiff claims that he was denied leave following his February 25, 2021 return to work for a potential kidney transplant, it is undisputed that he **never found a willing donor in 2021 and at no point in 2021 or 2022 ever even underwent a kidney transplant procedure**.  (Pl. Dep. at 45:20-24, 99:3-8, 116:7-12, 117:4, 117:15-120:7).  Moreover, when Plaintiff returned to work, while he advised Ms. Rookard that he would potentially need some additional leave in the future as he was in the process of seeking a kidney transplant, (Pl. Dep. at 113:8-115:8; Rookard Dep. at 59:16-60:4, 63:13-20), Plaintiff never provided Ms. Rookard or any other employees in Human Resources with any documentation requesting additional leave for a transplant and never had a date certain scheduled for a transplant.

A hallmark of the ADA's requirement that employers make reasonable accommodations for disabled employees is that the employee makes a specific demand for an accommodation, which is denied by the employer. See Gaston v. Bellingrath Gardens & Home, Inc., 167 F.3d 1361, 1363-64 (11th Cir. 1999) (An employer's "duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made."); Gibson v. ACG Flat Glass North America, 2023 WL 6406308, *3 (N.D. Ala. Oc. 2, 2023) (similar).  Again, Plaintiff mentioning that he might need potential leave in the future at some unknown date is not a specific demand. Also, and most importantly, Plaintiff was never told that he could not use his sick pool

leave to cover that additional leave (following the expiration of FMLA), let alone that he could not take any additional leave. Plaintiff was merely told that he would have to exhaust all his leave accruals before he utilized sick pool leave, and his termination happened well before he ever would have **hypothetically** needed leave for the additional surgery that **never happened**. (Rookard Dep. at 101:11-102:4; Rookard Dep. Ex. 7.)  Thus, he was never actually denied any accommodation request, let alone harmed by any alleged denial, and thus cannot establish an ADA failure to accommodate claim.  Holly v. Clairson Indus., L.L.C., 492 F.3d 1247, 1262 (11th Cir. 2007); Batson v. Salvation Army, 897 F.3d 1320, 1327 (11th Cir. 2018) ("The district court found, and Batson does not dispute, that she 'was never actually denied any request for accommodation.' Absent such a denial, there can be no failure to accommodate under the ADA."); EEOC v. Dolgencorp, LLC, 206 F.Supp.3d 1309, 1321 (E.D. Tenn. 2016) ("The Court notes that Atkins has not cited any precedent standing for the proposition that an employee may have a valid claim for failure to provide a reasonable accommodation where the employee did not actually need an accommodation.").

Simply put, the City granted each and every one of Plaintiff's leave requests. Plaintiff cannot point to a single instance where the City denied a leave request, and the kidney transplant surgery unfortunately never happened at any material time. As such, the City is entitled to summary judgment as to Plaintiff's failure to accommodate claim.  The assertion that his mention of a hypothetical need for potential additional leave in the future, which never materialized, somehow insulated his indefinite employment (or otherwise gives rise to a failure to accommodate claim) is not supported by the law.

## CONCLUSION

For all the foregoing reasons outlined above and in Defendant's Motion for Summary

Judgment, Defendant is entitled to summary judgment and this matter should be dismissed in its entirety, with prejudice.

     Respectfully submitted, this 23rd day of October 2023.


                                        **FREEMAN MATHIS & GARY, LLP**

                                        */s/ John D. Bennett*
                                        John D. Bennett
                                        Georgia Bar No. 059212
                                        Emily M. Walker
                                        Georgia Bar No. 221826
                                        *Attorneys for Defendant*

100 Galleria Parkway
Suite 1600
Atlanta, Georgia 30339-5948
T: (770) 818-0000
F: (770) 937-9960
E: jbennett@fmglaw.com
E: emily.walker@fmglaw.com

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed this DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT with the Clerk of Court using the CM/ECF system, which will automatically send an email notification of said filing to counsel of record.

This 23rd day of October 2023.

**FREEMAN MATHIS & GARY, LLP**

*/s/ John D. Bennett*
John D. Bennett
Georgia Bar No. 059212
Emily M. Walker
Georgia Bar No. 221826
*Attorneys for Defendant*

100 Galleria Parkway
Suite 1600
Atlanta, Georgia 30339-5948
T: (770) 818-0000
F: (770) 937-9960
E: jbennett@fmglaw.com
E: emily.walker@fmglaw.com